IN THE MATTER OF THE ASSIGNMENT OF JOHN A. CUR-
RIER, FOR THE BENEFIT OF CREDITORS.

[SPECIAL TERM.]

(Decided October 3d, 1878.)

Under the General Assignment Act of 1877, all the creditors whose names appear in
the schedules of the assignor with the proper statement of their claims, and
whose claims are not contested, are entitled to their dividends from the assigned
estate, even though their claims are not presented to the assignee after advertise-
ment.

The former rule in equity cutting off from a dividend such creditors as did not ap-
pear after advertisement and prove their claims before a referee appointed in a
suit for an accounting and settlement of the estate, as laid down in *Kerr* v. *Blod-
gett* (48 N. Y. 62) : *held*, not applicable under the general assignment act.

In proceedings under the general assignment acts (L. 1877, chap. 466, § 26 ; L. 1878,
chap. 318, § 26), neither costs nor counsel fees, payable out of the assigned estate,
can be allowed to parties other than the assignee.

The stipulation of counsel as to the compensation to be allowed a referee appointed
in such proceedings is not binding upon the court, as it does not come within §
313 of the Code of Procedure, which refers to civil actions only ; and a greater
allowance than $5 for each sitting and $3 for each adjournment in an ordinary
reference to pass an assignee's account, *held* to be unreasonable and disallowed,
notwithstanding a stipulation allowing a larger sum.

MOTION to confirm the report of John A. Bryan, a referee
appointed to take and state the account of an assignee, under
a general assignment for the benefit of creditors, and for the
settlement of allowances to counsel.

The facts are stated in the opinions of the court.

*D. Noble Rowan*, for assignee.

*John A. Mapes & N. B. Cook*, for creditors.

JOSEPH F. DALY, J.—The assignee having advertised for
creditors to present to him their claims with the vouchers
therefor duly verified, pursuant to section 4 of the act,
chapter 466, laws of 1877, and a limited number only of the

creditors named in the assignor's schedules having appeared and proved their claims, these creditors and the assignee now contend that all the other schedule creditors are cut off from any share of the estate. The authority relied on is *Kerr* v. *Blodgett* (48 N. Y. 62). It was there held that in an action in equity (commenced prior to the passage of the General Assignment Act of 1860) by the creditor of an assignor, on his own behalf, and on behalf of all other creditors of the assignors, against the assignee for an accounting, it was according to the practice of the courts of equity to make an interlocutory order referring the account of the assignee, and directing advertisement to be made for creditors to present their claims to the referee, and decreeing distribution of the estate among those only who proved their claims ; and that the interlocutory order was for the benefit of all the creditors, and bound them all whether they had actual notice or not ; and that after the estate was distributed, a creditor who had failed to appear and prove his claims, after such advertisement, had no remedy.

In an accounting under the general assignment acts (L. 1877, c. 468; L. 1878, c. 318), the court has no power to make an order requiring creditors to appear and prove their claims or be excluded from any share of the assigned estate. The advertisement for claims authorized by section 4 of the act of 1877 is made by *the assignee*, and nothing in the act can be construed into a provision cutting off from a distributive share a creditor who does not present his claim. The advertisement ordered in equity suits requires the creditors to appear before a referee, who exercises judicial functions in examining, allowing and rejecting claims presented. The assignee has no such judicial power.

The creditors of the assignor, whose names appear on the schedules as creditors, with the proper statement of their claims, need not, unless such claims are contested, present their demands to the assignee in order to obtain a dividend. The filing of the schedules in court, under the provisions of the act (sec. 3), is a presentation to the court of the claims therein admitted, and is *prima facie* evidence of the in-

debtedness of the assignor to the persons named as creditors. The fact is before the court and cannot be ignored.

Before the passage of the general assignment acts there was no provision of law requiring the making up, verifying and filing schedules in cases of assignments for the benefit of creditors. There was no method by which the court could ascertain who were the creditors of the assignor except by advertisement, which was always directed in the interlocutory judgment. Such persons only as appeared before the referee and proved their claims were deemed to have claims ; and the court was ignorant that others existed. In cases under the general assignment acts the proof of the claim is before the court, the assignee and the referee, duly presented and verified by the assignor.

One object of advertising for claims under section 4 of the act is to notify creditors whom the assignor may have omitted (either intentionally or unintentionally) from his schedules to come and present their claims to the assignee. It is also intended to relieve the assignee from the necessity of giving notice of the subsequent proceedings in accounting to creditors who have not presented their claims (section 12, sub. 13) ; but nothing in the act warrants the construction that it intended to cut off from participation in the fund creditors whose claims have been presented and authenticated by the assignor in his schedules, and who have not come forward (their claims not being attacked) to make further proof. Under section 4, after advertisement, a creditor is not bound to do more than present his claim to the assignee. This has been already done for him by the assignor. He has no proofs to produce, because the assignee has no judicial power to examine and determine upon proofs. Disputes as to claims are to be tried before a referee or jury on special order of the court (section 26), and parties who unsuccessfully dispute a claim must pay the costs of the litigation. Unless an order be made under the 26th section for the trial of disputed claims, and after due notice to the creditor whose claim is attacked, no creditor is bound to come to the assignee or referee with his proofs.

Report referred back.

Upon the question of allowances arising in the same matter the following opinion was delivered:—

JOSEPH F. DALY, J.—There is no authority for allowing costs and counsel fees in proceedings under the general assignment acts (L. 1877, c. 466, § 26 ; L. 1878, c. 318, § 26) to parties other than the assignee, payable out of the assigned estate. Whatever may have been the power of the court or judge prior to the amendments of the act above cited, the latter leave no doubt on the subject. They contain (sec. 26) an express enactment as to counsel fees and costs. The enactment is connected with the authority vested in the court, to order a trial before a referee or by a jury of any disputed claim or matter arising under the provisions of the act, and further provides that the court may, in its discretion, award reasonable counsel fees and costs *and determine which party shall pay the same.* The statute plainly intends the power to award costs and counsel fees shall be confined to cases of disputed claims and matters, and that the party to the dispute who has unsuccessfully prosecuted or defended shall pay his adversary reasonable costs and counsel fees. This provision adequately protects all parties.

The legislature evidently appreciated the danger of encouraging litigation in assignment cases, and has prevented any waste of the funds in the assignee's hands by such means. The creditors of each estate are numerous, and reasonable pretexts are not wanting for each to employ counsel, a moderate allowance to whom would, in nearly every case, absorb all the fund. If a creditor wishes his interest protected, and employs counsel for the purpose, he must expect to pay for the service out of his own pocket and not to charge the shares of all the other creditors with the expense. It may be said that the exertions of a single creditor will, by cutting off improper claims of other pretended creditors, or by sifting the assignee's accounts, materially swell the fund, which should then pay for the common benefit. But the statute gives the court power to inflict costs and counsel fees on defeated claimants and

Matter of Currier.

assignees in such cases, which costs and counsel fees will indemnify the creditor exerting himself in the way suggested. If, upon the accounting of the assignee it should appear that the latter has contested unjustly, creditors who have succeeded in cutting down his charges, or increasing the sum with which he is chargeable, may have costs against him personally, but not against the fund. There would be no protection against the obstinacy or fraud of the assignee if the fund and not he paid the expense of bringing him to terms ; and it is easy to see that if the cost of all the litigations that might arise in connection with these insolvent assignments were chargeable upon the fund, litigation of one form or another would not cease until the fund were exhausted.

There is no authority, therefore, for the allowances out of the fund asked for by the nine counsel who have appeared on this accounting. The creditor who instituted the proceeding to compel the assignee to account cannot have costs, because the assignee responded promptly. Nor are the other creditors entitled to bills of costs against him, as he has not impeded their investigation into his accounts, nor been convicted of any improper conduct.

The counsel fees paid by the assignee to his own counsel in protecting the assignment and the fund seem to be proper. They are, however, large enough to cover the expenses of this accounting, and no other allowance should be made.

The assignee's counsel and the several counsel for creditors entered into a stipulation to allow the referee to whom the accounts were referred a certain rate of compensation. This stipulation is not binding on the court, as the case does not fall within the provisions of sec. 313 of the Code, which refers to civil actions only. I do not regard as reasonable a greater allowance than $3 for each adjournment, and $5 for each sitting, in an ordinary reference to pass an assignee's account. The disbursement for referee's fees must be confined to an allowance on that basis.

Ordered accordingly.