## N. Y. COMMON PLEAS.

In the Matter of the Assignment of OTTO SCHALLER to EDGAR POOL, dated October 21, 1879, and the claims of MILO W. PEMBER, a creditor, against the assigned estate.

*General assignment act — Preferred claims — General release — Judgments obtained after assignment — Report of referee under order to take testimony and report — Irregularities in proceedings of assignee in reference to accounting — Affidavit of service of the notice to creditors to produce their claims before the assignee — Rules of common pleas respecting such service — Authority of referee on reference to take and state an account — Service by mail of citations — Authority of court as to service — Rights of creditors to notice and hearing on application for reference — Costs and disbursements allowable under assignment act and Code of Civil Procedure, section 3240.*

Where S. made an assignment to P. for the benefit of creditors, and one of the creditors, who was both a preferred and general creditor, signed, under mistake, a general release to both assignor and assignee, suppos-

Matter of Schaller.

ing it to be simply an agreement that the assignee be allowed to deliver to the assignor goods belonging to the assigned estate, so as to promote a composition or compromise between the creditors and the assignor, and the assignee objects to the claims of such creditor, because of such release, and refuses to allow the claims on that ground and also on the further ground that the said creditor had received promissory notes of the assignor on the execution of said release, which notes were dated subsequent to the assignment, and the release also recited another note representing the preferred portion of the creditor's claim, but made and dated prior to the assignment; and the creditor obtained judgments on all the notes while the assignment was being executed, but was paid no money on account of either the notes or the judgments. The creditor meantime also procuring a judgment in a court of equity setting aside the said release as against the assignor on the ground of mistake, but not making the assignee a party to such equitable suit, and there being no evidence that the assignee was privy to the making of the release, but some evidence to the contrary:

*Held,* on motion of the creditor to confirm the report of a referee reporting in favor of allowing the claims of such creditor as good and valid claims, and that they have been established and should be paid out of the assigned estate. "The referee's report as to the claims of such creditor seems entirely correct and should be confirmed."

So, where, on a motion by assignee to confirm, in whole or in part, a report by the same referee appointed to take and state the assignee's accounts, there is an absence of proof of service of notice to creditors to produce their claims before the assignee, as prescribed by the rules of this court, and, secondly, where it appears affirmatively that the citation was not served upon certain creditors who had filed claims with the assignee :

*Held,* that the order of reference to take and state the accounts was entirely irregular and conferred no authority upon the referee; that the referee cannot cure this irregularity nor usurp the powers of the court. These creditors had the right to be heard upon the application for a reference, and neither the assignee nor any other person or court can deprive them of that right.

*Held,* also, where it further appears from the papers submitted that the citation was served upon the creditors whom the assignee claims to have served by mail, and it does not appear that there was any authorization by the court that the service should be made in that way, that the report cannot be confirmed.

Where, in a proceeding under the general assignment act by a creditor to establish claims as a general and preferred creditor, which have been disallowed by the assignee, the creditor prevails on a reference, the referee reporting to the court that the claims are valid claims and established,

and that they should be paid by the assignee out of the assigned estate, and the court at special term, on motion, confirms such report of the referee, with costs and disbursements :

*Held*, " the same costs and disbursements are allowed as to a successful plaintiff in an action, by the Code of Procedure, with five per cent allowance upon the amount reported due, with ten dollars costs of motion to be paid by the assignee out of the assigned estate."

*Special Term, August,* 1881.

*Before* CHARLES H. VAN BRUNT, *Ch. J.*

MOTIONS to confirm two reports by the same referee.

*First.* As to the first motion — a motion to confirm the report of George B. Pentz, Esq., a referee appointed by an order of court to take the testimony respecting the disputed claims of Milo W. Pember and the issues raised by the petition, and to report his opinion thereon. A reference respecting the same claims had previously been made to the same referee on motion of assignee's attorneys, and the reference had been terminated by them after the testimony had all been taken, by reason of the illness of the referee, who inadvertently allowed the statutory time within which to file a report to expire. The first order of reference respecting the Pember claims was to hear and determine. The second order of reference provided that all the testimony on the former reference be used on the new reference. The referee made and filed his report under the second order in favor of the claim of Milo W. Pember, as established, to be a good and valid claim, and that it should be paid out of the assigned estate by the assignee. The testimony showed that the claim was originally for goods sold and delivered, namely, cassimeres and woolen goods, Mr. Pember, the creditor, being a wholesale dealer in such goods in the state of Connecticut, and Mr. Schaller, the assignor, being a jobber in the same class of goods and doing business in the city of New York; that after the sale and delivery of the goods, promissory notes were given by Schaller to Pember, and the notes renewed and changed, as to time

and amounts, to suit the convenience of the parties, and conform to payments and other allowances agreed upon by the parties. The goods were sold in 1878 and the assignment made in 1879, October 21. The assignment and schedules recognize all the claims now made by Pember and even more. The preferred portion of the claim is $347.42; besides this, there are sundry other claims not preferred, making in all upwards of $1,300. After the assignment was made, and in November, 1879, following, Otto Schaller, the assignor, entered into negotiations with his creditors to compromise. Edgar Pool, the assignee, would, as Schaller represented to creditor Pember, surrender to him, Schaller, all the goods of which Pool had taken possession under the assignment, if the creditors would release him, Pool, from any and all liability in the matter. Creditor Pember, therefore, undertook, as he supposed, to make such a release and deliver it to Schaller. The consideration of the release was, as it recites, several notes, one being dated September 15, 1879, and the identical note or claim preferred in the assignment in favor of creditor Pember. Other notes were also recited in the release as a part of the consideration, and a part of them dated subsequently to the assignment. The proposed compromise was never consummated and the notes were never paid. The notes represented, or were intended to represent the real indebtedness of Schaller to Pember. After the notes had become due two actions were brought in the marine court for the goods represented by the notes. Judgments were finally obtained in these marine court actions, but on amended complaint setting forth the notes. Thereafter, Edgar Pool, the assignee, heard of the release through some third party, a creditor named John S. Hulin, and that it was a general release. He thereupon gave notice to creditor Pember that the claims were disallowed by reason of this alleged general release. Hence the reference ordered as above to determine the question of the so-called release. Pending the reference to inquire into this release, creditor

Pember learned that the paper he signed was, in form, a
general release. He commenced an action in the supreme
court to cancel it and prevailed. The referee admitted evi-
dence of those facts and of the judgment cancelling the
release; he also admitted in evidence the judgment-roll in that
action and also the judgment-rolls of the marine court. The
report of the referee, which was in favor of the Pember
claims, was presented for confirmation on this motion, and the
main questions raised in opposition to its confirmation were
as to the effect of the release and the judgments on the notes.

*Chauncey B. Ripley* and *Samuel Jones*, on behalf of
creditor Milo W. Pember, made and argued the points
following:

I. Independently of the findings of the referee, the assignee
must pay the preferred claim of creditor Pember simply
because the assignment so directs in express terms. This
court has held in two cases, and the same doctrine is held by
the court of appeals, that "the authority of the assignee and
the control of the court over him are limited by the terms of
the assignment; that the court, therefore, has no power to
direct otherwise than the assignment prescribes respecting a
preferred claim and cannot compel a violation of the terms
of the assignment after it has taken effect" unless pursuant
to a decree in an equity suit brought for the purpose of set-
ting aside the assignment wherein all the creditors are made
parties (*In re Assignment of John D. Cordes, Daily Register,
October* 16, 1880, *per* VAN BRUNT, *J.; In re Ward &
Ploubet's Assignment, opinion of* VAN HOESEN, *J., filed
August* 4, 1880 ; *In re Assignment of John W. Lewis,* 81
*N. Y.,* 421).

II. The assignee has made out no case for rejecting any of
the Pember claims, and the referee could not have found
otherwise than that they were valid claims and that they
should be paid. The only objection to the Pember claims
which the assignee ever suggested is that he was informed

that Pember had executed a release of the claims; but the assignee offered no evidence against the validity of the claims, except a so-called general release together with the facts that it was signed by Pember and delivered to Schaller, while creditor Pember proved by his own testimony, by the testimony of the assignor, Schaller, and also by Mr. Zerwick, who was the subscribing witness to the so-called release, that the instrument was without consideration, that it was intended for no such purpose as a release of any of the claims referred to, and that it was signed with reference to some transaction that never was consummated and as recited in the complaint in the supreme court action which was brought to set aside the release as mentioned below. The testimony also shows that Pool was never a party to the instrument, and did not in any way participate in the transaction. Besides it was in evidence before the referee that this release had been declared void and set aside by our supreme court in an action brought for that purpose. The assignee's counsel was cognizant of such action at the time it was brought, and the reference was adjourned for that purpose and until judgment was obtained. It was also in evidence that in certain actions brought by Pember against Schaller in the marine court of the city of New York the said release was set up by Schaller as a defense to the said claims, and that judgments on all the claims were awarded to said Pember as plaintiff in those actions.

III. None of the so-called exceptions to the report of the referee in the Pember claims are available to the assignee, and for the reasons specified as to each exception. The referee's report was as full as is required in any case unless findings be specially requested. The referee was not required under the order appointing him to do more than report his opinion to the court, and that he did. His report states in general terms what the judgment or final order in the matter should be. Besides there was no request made by assignee's counsel to find any fact specifically. In order to render the proposed exceptions available at any time or for any purpose

Matter of Schaller.

the propositions embraced in them should have been submitted to the referee before he filed his report with a specific request that they be found by the referee as independent facts, that would have put the assignee's counsel in a position to file exceptions if the facts were not correctly found. But nothing else would secure the right to exceptions. How can it now be objected that there was no such specific findings when there was no request, and when it was not known to the referee that such specific findings were desired? The referee has found, as any judge has a right to find, in general terms for one of the parties. In so doing he is presumed to have found everything essential to support such general finding, including all the details, and the finding is properly expressed in the general language employed. Any judge or court may express that which is to form the basis of a judgment in a general way, and need not, in a case like the present, unless specially requested by counsel beforehand, find any question of fact or law in detail (*People* agt. *The Albany and Susquehanna R. R. Co.*, 57 *Barb.*, 204, 210, *and note* [*b*] *of N. C. Moak, Esq.* ; *Code Civil Pro.*, sec. 1023 ; *Stewart* agt. *Morss*, 79 *N. Y.*, 629).

IV. Privity could not be created between Pool and Pember respecting the so-called release under the rule in *Lawrence* agt. *Fox* (20 *N. Y.*, 268) and kindred cases, because Pool was not a "party intended to be benefited;" and there was no " obligation or duty owing " by Pember to Pool ( *Vrooman* agt. *Turner*, 69 *N. Y.*, 280, 284, *per* ALLEN, *J.*).

V. Costs should be allowed creditor Pember, of course (*Moving Aff.* ; First *Nat. Bk.*, &c., agt. *Tamajo*, 77 *N. Y.*, 476; *Cornelius* agt. *Barton*, *N. Y. Weekly Dig.*, June 10 *and* 17, 1881, *pp.* 216, 217).

VI. The referee's report should be confirmed.

*Thomas F. Wentworth* (*Foster, Wentworth & Foster, Attorneys*), for Edgar Pool, assignee.

I. The release, exhibit A, operated as an extinguishment

Matter of Schaller.

of the Pember claims (*Hosack* agt. *Rogers*, 8 *Paige Ch. R.*, 229).

II. The marine court judgments obtained by Pember on the notes operated as an estoppel.

III. Two of the notes were dated after the assignment, and are new and independent obligations.

IV. The defense of the supreme court judgment is not available, because Pool was not made a party.

V. The release is the assignee's voucher for the execution of his trust respecting the Pember claims.

VI. Pember should not have costs as to the supreme court judgment, because it is a defense occurring subsequently to the assignee's petition.

VII. The report should not be confirmed.

*Second*, As to the second motion — a motion to confirm the report of the same referee appointed to take and state the account. This was a motion made by assignee's attorneys, bringing up the report to take and state the accounts for confirmation or otherwise. It was opposed on various grounds, mainly on the ground that the attorneys for assignee had put in excessive charges for professional services rendered to Pool, assignee, specifying a bill for bookkeeping by a former employe of assignee, and fees and expenses for collecting small sums; and especially charges for contesting the Pember claims.

For the motion, *Thomas F. Wentworth* (*Foster, Wentworth & Foster, Attorneys*) urged that the report should be conconfirmed, except so far as it recognized the Pember claims as valid claims.

In opposition, for Reynolds, a creditor, *George W. Gallinger.*

The charges of the assignee's counsel are excessive, being twenty-five per cent of the entire fund.

Matter of Schaller.

*George B. Ashley* appeared for John S. Hulin, and *Chauncey B. Ripley*, for creditor Pember.

VAN BRUNT, *J.* — The irregularity in the proceedings of the assignee in reference to the accounting makes it impossible to confirm the referee's report.

There is no affidavit of service of the notice to creditors to produce their claims before the assignee, as prescribed by the rules of this court.

*Secondly.* It appears affirmatively that the citation was not served upon certain creditors who had filed claims with the assignee. It is true that the referee upon the reference has endeavored to cure this irregularity, but I find no authority in the statute authorizing the referee to usurp the powers of the court. These creditors had the right to be heard upon the application for a reference, and neither the assignee or any other person or court can deprive them of that right. It would seem, therefore, that the order of reference to take and state the accounts was entirely irregular and conferred no authority upon the referee.

It further appears from the papers which have been submitted that the citation was served upon the creditors whom the assignee claims to have served by mail, and it does not appear that there was any authorization by the court that the service should be made in that way.

The referee's report as to the claim of Milo W. Pember seems to me entirely correct and should be confirmed. For these reasons the referee's report cannot be confirmed, and for these, if for no other.

---

NOTE.— Application having been made by creditor Pember's counsel for the settlement and entry of an order pursuant to the opinion above, points were submitted on the question of costs as follows:

*Chauncey B. Ripley*, for creditor.

I. Costs should be allowed creditor Pember of course, and a reasonable counsel fee (*General Assignment Act*, 1877, *pamphlet with notes by Bishop*, 23, *sec.* 26).

Matter of Schaller.

II. The costs asked are ordinary costs, viz.: Forty dollars, *i. e.*, twenty-five dollars before and fifteen dollars after notice, the same allowed for similar service in an action (*Code Civ. Pro., sec.* 3240).

III. The disbursements have been proved by affidavit of creditor Pember's attorney.

IV. The allowance of $150 is reasonable for thirty sittings. Counsel for the assignee asks for an allowance of $250 in this very matter for his extra costs; it does not therefore lie in the mouth of assignee's counsel to say that $150 is too much for his adversary, or $125 too much for the referee. The referee's fees, $125, should be allowed because it has been paid as a necessary disbursement; besides, the parties stipulated not to oppose the amount; the amount is reasonable for work done; there having been between thirty and forty sittings.

V. The authorities sustain such charge: Where " the court referred the matter back to the same referee, directing him to report the evidence taken upon the first reference," it is the same as if the testimony had been taken in the second reference (*Roberts* agt. *White*, 73 *N. Y.*, 375). The referee does not forfeit his fees where he comes within the spirit of the statute or where the parties waive a technical irregularity (*Cornelius* agt. *Barton, N. Y. Week. Dig., June* 10 *and June* 17, 1881, *pp.* 216, 217; *First Nat. Bank* agt. *Tamajo,* 77 *N. Y.*, 476; *Geib* agt. *Topping,* 11 *Week. Dig.,* 172; *Waters* agt. *Shepherd,* 14 *Hun,* 223). See, also, order VAN HOESEN, J., herein, *In re Ashley's* costs, in which judge VAN HOESEN expressly grants leave to Mr. Ashley to apply for costs.

VI. The special term decision of judge JOSEPH F. DALY (*Matter of Currier,* 8 *Daly,* 122), where the question arose on an application to take and state an account, is not necessarily in conflict with this application, for reasons: (1.) There the reference was not of the kind referred to in section 26 of the general assignment act; that is a disputed claim to which the power to award costs is limited (*Matter of Currier,* 8 *Daly,* 122). (2.) That case certainly holds that the creditor should be indemnified (*Id.,* 123). (3.) And in this case the costs will, as a matter of fact, come out of John S. Hulin, who is the only other preferred creditor, and he is entitled to the entire fund; Hulin is the same person at whose request the matter was referred. (4.) If not payable out of the estate, the costs certainly should be paid by Hulin or the assignee personally (8 *Daly,* 123).

*Thomas F. Wentworth,* for assignee, made and submitted the following:

I. The only proper order herein to be entered under the decision and proceedings is one confirming the referee's report.

II. The order of reference herein was made not to hear and determine, but simply to inform the mind of the court by taking the testimony and reporting the same with referee's opinion. It was not a special proceed-

Matter of Schaller.

ing as no issues were referred, but simply a reference to take testimony and return the same for the use of the court.

III. The court could, under section 26 of the assignment act, order a reference of the issues either before a jury or a referee, and in this case the judgment of the referee would be final and the proceeding before him a trial entitling the prevailing party to costs, and the original order in this matter "*to hear and determine*" was annulled, and the present order entered in its stead simply to report to the court for the latter's information. It was not a litigation in a court of justice. The proceeding herein is a motion determined by the court on papers submitted.

IV. Under the twenty-sixth section, costs and counsel fees are discretionary. There are four excellent reasons why they should not be allowed: 1st. When the assignee commenced this proceeding the release stood as a valid release of those claims. 2d. Two of the notes proven against the estate and rejected by the assignee, were made twenty-six days after the assignment, and it was not until this proceeding was inaugurated and during its progress, and by means of its record, that Pember changed the character of his claim against the estate from one on these two promissory notes to one for goods sold and delivered, and this too when, 3d, he had already taken judgment in the marine court on those two notes two months before the assignee made this motion, and thus giving presumptive notice at least that he did not propose two months after the judgment in marine court to turn around a third time and conclude to collect his claim as for goods sold and delivered.

V. The assignee should not be charged with Pember's laches who neglects to set his release aside until after the motion in this matter, and then too without any notice to assignee.

When I read over the above, on *second thought*, it seems that Pember had no claim when this motion was made, and that he has done only what he was obliged to do, namely, come in and establish his claims, and he does so, if I understand the view probably taken by the special term, by proceedings since the assignee's motion. Why should the estate pay Pember for doing that without which he never could have had a claim against it ? It is equivalent to being compelled to board a man for nothing, and also to pay him for his company in addition. I don't think he ought to have a penny for establishing his claim (disbursements or costs).

Whereupon judge VAN BRUNT directed the entry of an order as follows:

*Ordered,* that the referee's report as to the claim of Milo W. Pember be and the same is hereby confirmed in all respects, and the said motion granted with the same costs and disbursements as are allowed to a successful plaintiff in an action by the Code of Procedure, with five per cent allowance upon the amount reported due said Pember; said costs and disbursements to be taxed by the clerk upon two days' notice to assignee, and with ten dollars costs of this motion to be paid by the assignee out of the assigned estate to the attorney for said Milo W. Pember, creditor.

The People *ex rel.* Rosenkrans agt. Carr.

And the costs were thereupon taxed and readjusted, on notice, as follows: Costs before notice of trial, twenty-five dollars; costs after notice of trial, fifteen dollars; trial fee, issue of fact, thirty dollars; allowance by court, five per cent on $1,227.38, amount allowed with interest, sixty-one dollars and thirty-six cents; motion costs allowed by court, ten dollars; trial occupied more than two days, ten dollars.

The disbursements were as follows: Referee's fees paid G. B. Pentz, $125; clerk's fees on entering judgment, fifty cents; affidavits and acknowledgments, ten, one dollar and twenty-five cents; satisfaction piece, thirty-eight cents; transcript and filing, eighteen cents; certified copies judgments, twenty-nine dollars and sixty-three cents; certified copies, orders, six, sixty cents; postage, sixty cents; stenographer's fees, nine dollars and fifty-cents; sheriff's fees on execution, seventy-two cents; attendance of following witness, G. Zerwick, two days, one dollar; total amount of costs and disbursements, $320.72.