ROBERT H. KERR et al,, Appellants, *v.* WILLIAM T. BLODGETT et al., Respondents.

An insolvent partnership made an assignment of its property and effects for the benefit of creditors; one of the creditors brought an action in his own behalf, and that of others who should come in and claim the benefit thereof, against the assignees, for an accounting and distribution of the trust fund, in which action an order was entered appointing a referee to take and state the account of the assignees, and to report the amount due such creditors as should come in under the order and seek the benefit of the action, and directing the publication of notices to the creditors to come in and exhibit their demands, which order was complied with, and upon the coming in and confirmation of the report of the referee an order was made for the distribution of the fund, which was fully executed by the assignees.

*Held*, that in the absence of fraud, all the creditors of the assignor were bound by the decree, whether they came in and proved their claims or not, and that a creditor who failed to do this was barred, although he had no notice of the action, and knew nothing of it until after the distribution of the trust fund ; also *held*, that it was not the duty of the assignees, having knowledge of the claim of a creditor who did not appear, to produce and prove such claim before the referee.

(Argued May 17th, 1871 ; decided September term, 1871.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial district, affirming a judgment in favor of defendants, entered upon the decision of the court at Special Term.

This was an action by the plaintiffs as creditors of a limited partnership doing business under the name of John Meads, Jr., against the defendants as assignees of such partnership for an accounting and other relief.

The action was brought to trial at a Special Term held in the city of New York in April, 1864, and the presiding justice found the following facts:

John Meads, Jr., and William Tilden, in September, 1855, formed a special partnership, in pursuance of the statute, the name of the firm being John Meads, Jr. Its place of business was in the city of New York. This firm became insolvent March 2, 1857; made an assignment, executed by John Meads, Jr., for the benefit of its creditors, to the defendants. There was no schedule of the creditors annexed. The defendant Blodgett took measures to ascertain who were the creditors, and made a list of them and the amount of their debts or claims. The plaintiffs were creditors, and of this fact and the amount of their debt or claim Blodgett had notice, and caused their names and the amount of their debt to be inserted in the list. The defendant Meads had access to the papers and the list of debts and creditors, and nature of the claims of the plaintiffs. The defendants proceeded to collect the debts; but having doubts as to all the creditors, and deeming it unsafe to make a distribution of the trust funds without the directions of the court, requested one Dexter Reynolds to become a purchaser of a debt against John Meads, Jr., the limited partnership, and to institute an action against the assignees, to compel them to account to and distribute the trust funds. Such action was commenced in this court in June, 1859, in the county of Albany, in which the defendant Meads resided. The defendant Blodgett resided in the city of New York. An order was entered at a Special Term, held in Albany, June 28, 1859, appointing James Edwards a

referee, to take and state the accounts of the defendants, and to report the amount due to the plaintiff, and to each of the other creditors, respectively, of the limited partnership of John Meads, Jr., who should come in under the order and seek the benefit of the action, and directing that the referee should cause advertisement for such creditors to come in and exhibit their demands before him by a day to be fixed for that purpose, to be published once in each week, for at least three weeks, in the State paper, and in a newspaper in the county of Albany, and also in one printed in the city of New York.

The referee caused notice to be published, as directed in the order, in which the creditors were required to come in and exhibit their respective demands on or before the 26th day of July, 1859, or that they would be excluded from the benefit of the order and from any distributive share of the funds in the hands of the assignees. The referee made his report, dated October 26, 1859. Most of the creditors came in and exhibited their demands. An order was made at the Special Term, October 26, 1859, confirming the report and giving directions for the sale of certain assets and for the distribution of the trust funds. This order was fully executed before the commencement of the action.

The action by Reynolds was in his own behalf, as well as in behalf of all others similarly situated who should come in and claim the benefit thereof.

The plaintiffs in this action resided in New York, where John Meads, Jr., had been in business and had failed. They did not come in under the order and exhibit their demands. They had no notice of the action and proceedings by Reynolds against the assignees other than the notice published in the newspapers by Reynolds, and they never saw or heard of this notice, and knew nothing of it until after the distribution of the trust funds had been made. No distribution was made to them or on account of their demands. The defendants did not present such demands to the referee or call his attention in any way to them. It is further found that there was no collusion by the defendants with Reynolds, or any of the cre-

ditors in the bringing of or in connection with the action brought by Reynolds against them, nor were the defendants guilty of any actual fraud, or intended fraud, upon the rights of the plaintiffs in that action. The defendants intended to act fairly and to execute faithfully the trust they had assumed. They were under the impression that they had no duties to perform other than to obey and execute the orders of this court in the action brought by Reynolds against them, and they did obey and execute such orders.

The plaintiffs in this action recovered judgments against John Meads, Jr., the limited partnership, July 5, 1859, one for the sum of $494.85, the other for the sum of $298.36, and executions were issued upon such judgments and returned unsatisfied. And the said justice decided, as a conclusion of law, that the action by Dexter Reynolds in behalf of himself and other creditors against the defendants, and the proceedings and judgment therein, constituted a defence in this action, and that the plaintiffs herein had established no cause of action against the defendants, and that the complaint be dismissed with costs. The other facts, so far as important, appear in the opinion.

*D. McMahon* for appellants. The creditors were equally entitled to share in the assets. (2 R. S., 4th ed., 175, 176, §§ 20, 21; *Jackson* v. *Sheldon,* 9 Abb., 127.) The assignees were bound to account to plaintiffs for their proportionate share, unless protected by some legal proceeding. (*Mills* v. *Argall,* 6 Paige, 577; *Russell* v. *Lasher,* 4 Barb., 232; *Bell* v. *Holford,* 1 Duer, 58; S. P. held in *Sheldon* v. *Smith,* 28 Barb., 593; *Shepherd* v. *McEvers,* 4 Johns. Ch., 136; *Cruger* v. *Halliday,* 11 Paige, 314.) It was the duty of the assignees to have asserted the rights of the plaintiffs. (*Hawkins* v. *Hawkins,* 23 Exch., 543; *Powell* v. *Wright,* 29 id., 744; *Wood* v. *Burham,* 6 Paige, 513; *Berrian* v. *McLean,* 1 Hoff. Ch., 435; *Bruck* v. *Pennybacker,* 4 Leigh, 5; *Johnson* v. *Candage,* 31 Maine, 28; *Pingree* v. *Comstock,* 18 Pick., 46; *Griffin* v. *Macauley,* 7 Grat., 476.) An assignee cannot

be discharged, save by consent of all parties interested. (*Shepherd* v. *McEvers*, 4 Johns. Ch., 36; *Cruger* v. *Halliday*, 11 Paige, 314; *Niles* v. *Everham*, 31 Eng. L. & Eq., 237; *Bell* v. *Holford*, 1 Duer, 58.) A trustee cannot act for his own benefit in a contract on the subject of the trust. (*Green* v. *Winter*, 1 Ch., 29; *Van Horn* v. *Ford*, 6 Johns. Ch., 388; S. P. in *Duffy* v. *Dunan*, 32 Barb., 587; *Cumberland Coal Co.* v. *Sherman*, 30 id., 553.)

*John H. Reynolds* for respondents. The decree in the Reynolds suit, authorizing the creditors to come in and prove their demands, operated as an interlocutory judgment in favor of each and every creditor, and binds each creditor. (*Thompson* v. *Brown*, 4 Johns. Ch., 619; *Brooks* v. *Gibbons*, 4 Paige, 374; *Wilder* v. *Keeler*, 3 id., 164; *Egberts* v. *Wood*, 3 id., 518; *Innes* v. *Lansing*, 7 id., 583; *McKenzie* v. *L'Amoreux*, 11 Barb., 516; Story's Eq. Jur., 530, § 549; Code of Procedure, § 119; Van Santvoord's Eq. Pr., 77, 78; *Gilpin* v. *Lady Southampton*, 18 Ves., Jr., 469.) Plaintiffs' remedy, if any, was to apply to be let in and prove their demands in the Reynolds suit. (*Brooks* v. *Gibbons*, 4 Paige, 374.)

EARL, C. The suit instituted by Dexter Reynolds, as well in his own behalf as in behalf of all other creditors similarly situated, was commenced and conducted to its termination according to the practice of courts of equity. In such cases it is many times impracticable to make all the persons who are interested in the fund parties to the suit. They may be unknown, or they may be so numerous that they cannot, with reasonable expense and diligence, be reached. Hence, suits of this kind have been sanctioned as indispensable to the distribution of trust funds and the settlement of trust estates in courts of equity. (*Thompson* v. *Brown*, 4 Johns. Ch., 619; *Wilder* v. *Keeler*, 3 Paige, 164; *Egberts* v. *Wood*, 3 id., 518; *Brooks* v. *Gibbons*, 4 id., 374; 1 Story's Eq. Jur., § 549.) And the practice is continued under the Code. (Code, § 119; *McKenzie* v. *L'Amoreux*, 11 Barb., 516; Van Santvoord's Eq. Pr., 77, 78.)

In such a suit, when an order or decree for an accounting is once made, under which all creditors are authorized to come in and present their demands, it operates as an interlocutory judgment, in favor of each and every creditor of the fund, whether he actually comes in or not, as effectually as if he had been named and had appeared as a party; and after such an order is made, no other creditor will be allowed to bring or to proceed with a separate suit for relief, but he must prove his claim and seek his relief in that suit.

If he fails to come in and prove his claim, before the final decree for distribution, he will be too late, and his claim will be barred, as it certainly would after the fund was distributed under the decree. After the decree, and before distribution, a creditor who has not proved his claim may, upon a satisfactory excuse for his default, apply to the court, in that action, to be let in, and the court may open his default, as in other cases, upon such terms as may be proper.

It is not disputed that the proceedings in the Reynolds suit were conducted, in all its stages, according to the practice sanctioned by courts of equity, and, hence, the judgment in that suit is binding upon the plaintiffs, just as if they had been parties to it, and their claim had been denied and defeated, unless they can assail or attack it for fraud, and claim its absolute nullity as to them on that account. If the defendants instituted and carried through that action for a fraudulent purpose, the judgment therein should not protect them. They should then occupy the same position as if they had paid the fund, excluding the plaintiffs, without the direction of the court. But the difficulty which the plaintiffs have to encounter is that the court has found that the defendants were not guilty of any fraud in that action, and, so far as I can perceive, no fraud is to be imputed to them from the facts found.

It is true that they procured a claim to be assigned to Dexter Reynolds, and procured him to institute the suit, and that one of them aided him in drawing some of the papers and conducting some of the proceedings in the cause. But all

this works no harm to these plaintiffs. The question is, were the proceedings fairly conducted? Were the defendants guilty of any fraud in that suit, and did they do anything therein or in reference thereto to mislead or defraud these plaintiffs? So long as they did not, it made no difference that they procured a friendly creditor to commence the suit. Whether the creditor was friendly or hostile to them, the plaintiffs had the same rights, and could have the same advantages and privileges in the suit. (*Gilpin* v. *Lady Southampton,* 18 Vesey, 469.)

But the important question, and the one upon which the plaintiffs' counsel seems most to rely, is whether the defendants ought to have represented and proved the plaintiffs' claims before the referee in that action. They had knowledge of these claims, and omitted to produce or prove them before the referee. And the plaintiffs claim that they were guilty of a breach of trust for this omission of duty. We are cited to no decision imposing this duty upon the trustees. Here there was no haste in the proceedings; nothing was done to conceal them from the plaintiffs. The trustees gave all the notice the law required. The fund was under the control of the court, and the court was administering it and ordered that notice should be given to the creditors. The trustees had the right to suppose that the notice given had reached the plaintiffs, and that for some reason, perhaps because they desired to attack the assignment and not recognize its validity, they did not desire to prove their claims. A creditor's suit in such a case is instituted, not only for the benefit of the creditors, but also for the protection of the trustees, and so long as they follow the directions of the court in the suit, and do nothing to mislead or defraud any one, they must be fully protected. They have no active duty to present and establish claims of creditors. Suppose they should present a claim, and the plaintiffs or some other creditor should dispute it, would they be obliged to incur the expenses of establishing the claim? Clearly not. I conclude, therefore, that no fraud or breach of trust can be imputed to the

defendants for not presenting and proving plaintiffs' claims before the referee.

It may be that the claims assigned to the father and sister of the assignor, which cost less than the dividend, were purchased and assigned under such circumstanses that they were not entitled to draw from the fund more than they cost. But that question should have been presented to the referee, and is of no importance to the plaintiffs who, by their default, were shut off from any dividend.

I have looked carefully at the exceptions taken by the plaintiffs during the trial, and find none of them well founded. And I reach the conclusion that the judgment should be affirmed with costs.

LEONARD, C. The question of fraud is the only material one in the case. That inquiry was one of fact, and the judge has found, against the plaintiffs, that there was no fraud or collusion by the defendants in respect to the judgment which they have sought to review. The judgment in the action of Reynolds against Blodgett and Meads is conclusive against these plaintiffs, unless they were able to show some fraud or misconduct on the part of these defendants in suffering the judgment. It cannot be collaterally assailed or inquired into.

There appears to have been good cause for such an inquiry as was set on foot in that action. The special partnership being carried on in the name of John Meads, Jr., the general partner, it was not possible to know, with certainty, whether those who claimed against the fund were his private creditors, or those of the special partnership. For the purpose of obtaining a judicial inquiry as to the true and proper claimants, the action brought by Dexter Reynolds was proper, although set on foot by the defendants. The remote suggestion of benefit to be derived by the defendant Meads, by excluding the two small demands of these plaintiffs, together amounting to about $800, is too trifling to be considered. As against the defendant Blodgett, the objection is more insignificant. These plaintiffs suggest no valid defence which

Blodgett and Meads ought to have interposed to the action of Reynolds against them.   The fact, that there was no fraud or evil intention on the part of these defendants as against these plaintiffs, includes every demand to find facts or conclusions of law made by the plaintiffs' counsel, and not specifically passed upon by the judge.   The authorities in support of the action of Reynolds, and the practice adopted, are well established, and in frequent use, and it is unnecessary to repeat them here.

The questions as to the exclusion of evidence, offered by the plaintiffs, appear to me untenable.

The judgment should be affirmed, with costs.

All concur, except HUNT, C., not voting.

Judgment affirmed.