AARON R. STEVENS, HARPER W. ROGERS, NANCY E. WILBUR AND ANDREW A. DOUGLAS, AS TRUSTEES, ETC., OF WILLIAM H. DOUGLAS, DECEASED, APPELLANTS, *v.* THE UNION TRUST COMPANY OF NEW YORK AND OTHERS, RESPONDENTS.

*Representative action, by one in behalf of himself and others similarly situated — the judgment therein is not conclusive if the action is fraudulently conducted — how reviewed in another action — proper parties to a representative action for the foreclosure of a lien — receiver's certificates.*

An action of mortgage foreclosure was brought by a bondholder of the Lebanon Springs Railroad Company in behalf of himself and of others similarly situated, to procure a sale of said company's road, and also to obtain an adjudication that a judgment affecting the road, obtained in a suit somewhat similar in its nature, brought by one Sackett, be adjudged fraudulent, and praying that all liens upon the road be foreclosed, and that the lien sought to be enforced be adjudged

to have priority over those allowed and credited in the Sackett suit the judgment in which was sought to be set aside as fraudulent.

*Held,* that if the Sackett suit was, in truth, a representative one, fairly brought and honestly and regularly conducted for the benefit of all the bondholders, the judgment therein would be conclusive; but if it was not conducted in good faith, and the suit was used as an instrument to acquire advantages for the plaintiff bringing it, at the expense of the interests of those whom he assumed to protect, that the latter would not be bound thereby.

That an action in the nature of a bill of review impeaching the representative action so brought by Sackett, and the judgment entered therein, for fraud, brought before the court the fraudulent practices of the plaintiff therein, and the proceeding suffered by him to be taken in the action, whereby he wronged those whom he assumed to protect.

That such an action does not rest upon any alleged errors of the court in its treatment of the former suit, but upon the fraud of the plaintiff therein.

That, as in this case the plaintiff in the representative action appeared to have deliberately planned the spoliation for his own benefit of the Lebanon Springs bondholders, for whose alleged protection the action was brought, the judgment therein could not be sustained.

That receiver's certificates issued in the representative suit brought by Sackett would not be obligations enforceable out of the property of the road, as against parties who were not concluded by the judgment and proceedings in the action in which they were issued.

Where a party brings a representative action in behalf of himself and others, he is bound to bring into such action as parties those who ought to be sued, and where such an action is brought to effect a sale of a railroad, the interest of the bondholders requires that all outstanding liens and clouds upon the title behind the bonds should be cut off, and although the trustee of a mortgage given to secure the holders of bonds issued thereunder may refuse or neglect to act properly as such, and in that case an action may be brought by one or more bondholders acting as the representative of all to enforce their rights, yet the trustee should be made a party to such action and be brought into court.

APPEAL by the plaintiffs from a judgment entered in the office of the clerk of the county of Rensselaer on the 24th day of January, 1890, and also from an order denying the plaintiff's motion in relation to the form of entry of the judgment to be entered herein, made at a Special Term held in Albany county on the 24th day of January, 1890.

The judgment was entered upon a decision rendered at the Rensselaer Special Term, upon a trial before the court, dismissing the complaint upon the merits, as to the answering defendants, and an order was made denying judgment against the defendants who had made default.

The action was originally brought by the plaintiff Stevens, in behalf of himself and of others similarly situated, to procure the sale of the Lebanon Springs Railroad, under judgments of. foreclosure and sale procured by the defendant the Union Trust Company, in December, 1872, as trustee for the first-mortgage bondholders of the Lebanon Springs Railroad Company's first-mortgage bonds, and also as trustee for the bondholders of the Harlem Extension Railroad Company's mortgage bonds upon the same railroad; the Harlem Extension Company being the subsequent owner of the same railroad. The plaintiff Stevens owned the Lebanon Springs bonds to the amount of $2,200, and the Harlem Extension bonds to the amount of $5,000. Other plaintiffs, during the pendency of this action, were allowed to come in who owned both classes of bonds.

The complaint is also in the nature of a bill of review of a judgment obtained in an action somewhat similar to this, brought by one Marvin Sackett against Russell C. Root and three others, in 1880, the plaintiff in this action asking relief against that action and proceedings therein as fraudulent, and praying to foreclose all liens, real or apparent, upon the railroad, and to establish the priority of the liens asserted by the plaintiff against all the liens allowed and created in the Sackett suit.

The plaintiff makes parties defendant all persons who can claim under either the Sackett judgment or liens created since the foreclosure judgments. Answers were interposed by holders of receiver's certificates created in the Sackett suit, alleging that the plaintiffs are bound by that suit, and by the trustees of a mortgage, for $12,250,000 issued by the New York, Boston and Montreal Railway Company, and by Park and Duncan as owners of a mortgage of $5,000,000.

The further facts are sufficiently stated in the opinion.

*E. W. Paige*, for the appellants.

*Matthew Hale, Delos McCurdy* and *Robert Ludlow Fowler*, for the respondents.

Landon, J.:

The disposition of this case requires us to determine: First. What were the rights of the plaintiffs as bondholders of the Lebanon

Springs and Harlem Extension Railroad Companies at the date of the commencement of the action of *Marvin Sackett* v. *Russell C. Root and others?* Second. Was that action a representative one, fairly conducted for the benefit of all the bondholders, or was it so vitiated by fraud as to entitle the plaintiffs to have the orders and judgment therein vacated and set aside as to them.

A brief reference to the facts, most of which were found by the trial court, will, we think, make the proper answers to these questions obvious.

In December, 1872, the Union Trust Company, as trustee for the holders of the first-mortgage bonds of the Lebanon Springs Railroad to the amount of $2,000,000, obtained as plaintiff in two actions against the proper defendants, one in the Supreme Court of the State of New York, and the other in the Court of Chancery of the State of Vermont, judgments of foreclosure and sale — in the New York action of so much of the Lebanon Springs Railroad as was situate in that State, and in the Vermont action of so much thereof as was situate in that State.

The railroad extended from Chatham, New York, to Bennington, Vermont. Subject to the mortgages upon which these two judgments were obtained, the Lebanon Springs Railroad Company had been merged by due consolidation agreements into the Harlem Extension Railroad Company. That company had issued its mortgage bonds to the amount of $1,500,000, and secured them by a mortgage upon the Lebanon Springs Railroad and a small additional railroad, not necessary here to be further mentioned, given to the Union Trust Company as trustee for the bondholders. In December, 1872, the Union Trust Company, as plaintiff, obtained against the proper parties defendant judgment of foreclosure and sale, in the Court of Chancery of Vermont, upon the last-named mortgage. These three judgments were effective, if executed, to vest complete and unincumbered title in the purchaser under them of the Lebanon Springs Railroad.

While the actions which resulted in these judgments were pending Trenor W. Park and William B. Duncan, who were large holders of both the Lebanon Springs and Harlem Extension bonds, were active promoters of a scheme which resulted in the consolidation of the Harlem Extension Railroad Company with various other

railroad companies, and the merging of the companies and the vesting of the titles of their railroads into the consolidated company known as the New York, Boston and Montreal Railway Company. By the consolidation agreement it was proposed that the New York, Boston and Montreal Railway Company should provide, by means of its mortgage bonds to be issued, $5,000,000, or securities to that amount, to provide for the $2,000,000 of Lebanon Springs bonds, and the $1,500,000 of Harlem Extension bonds and the interest thereon, and for other claims against those companies.

It was contemplated to consummate this scheme in time to prevent the sale of the Lebanon Springs Railroad under the foreclosure judgments, but as many of the bondholders were towns, and it was otherwise difficult to procure their acquiescence, it was concluded by the promoters to let the forclosure sales take place, and then arrange with the purchaser.

Park and Duncan had no authority to act for any of the bondholders other than themselves, but they assumed to be masters of the situation so far as the bondholders were concerned.

The railroad in each State was brought to sale under the three foreclosure judgments in January, 1873. At the referee's sale in New York William B. Duncan bid off the property for $100,000. At the master's sales in Vermont Trenor W. Park bid off the property, bidding $25,000 at each sale. As they claimed to be acting for the bondholders, neither of them paid anything upon his bid, except the costs, less than $1,000.

At the request of Duncan the referee executed and delivered a deed of the property in New York to one Hull, who was Duncan's clerk. Hull paid nothing. At the request of Park the master in Vermont executed and delivered a deed of the property in that State to one Lincoln, who was Park's clerk. Lincoln paid nothing. Hull and Lincoln two days thereafter, at the request of Park and Duncan, executed and delivered to Park and Duncan their bond for $5,000,000, and also their mortgage upon the Lebanon Springs Railroad to secure its payment. Park and Duncan then completed their negotiations with the New York, Boston and Montreal Railway Company, whereby the latter agreed to purchase the Lebanon Springs Railroad, subject to the Hull and Lincoln mortgage of $5,000,000, and to provide for its payment out of $25,000,000 of new

bonds to be issued by the New York, Boston and Montreal Railway Company. Thereupon Hull and Lincoln, at the request of Park and Duncan, conveyed the Lebanon Springs Railroad to the New York, Boston and Montreal Railway Company for the expressed consideration of five dollars, subject to the $5,000,000 mortgage.

The New York, Boston and Montreal Railway Company then, in pursuance of its agreement with Park and Duncan, issued a first mortgage upon its entire property, including the Lebanon Springs Railroad, for $12,250,000 to Brown, Seligman and Sherman as trustees for the bondholders to that amount, and also a second mortgage upon the same property for $12,750,000 to the New York Loan and Indemnity Company, as trustees for the bondholders to that amount.

The New York, Boston and Montreal Railway Company issued $6,000,000 in amount of these bonds and sold them in France to *bona fide* purchasers, and out of the proceeds paid to Park and Duncan upon the Hull and Lincoln mortgage $807,077.05. Park and Duncan paid no part of this sum to any of the Lebanon Springs or Harlem Extension bondholders other than themselves. The New York, Boston and Montreal Railway Company did not take possession of the Lebanon Springs Railroad, but, in conjunction with Park and Duncan, leased it to the Central Vermont Railroad Company. Soon after the New York, Boston and Montreal Railway Company became hopelessly insolvent, and although a receiver, the defendant Butterfield, was appointed, yet he never had anything to do or receive. The company practically ceased to exist. The Vermont Central Railroad Company abandoned the Lebanon Springs Railroad in August, 1877. Soon after the defendant Russell C. Root took possession of it without right, but under the favor of Park and Duncan. Root organized the defendant, the Harlem Extension South Coal Transportation Company, and that company, Root being manager, operated the railroad until October, 1880, when it was delivered to the receiver appointed in the action of *Marvin Sackett* v. *Russell C. Root and others.*

Park and Duncan's plan of protecting the bondholders through the New York, Boston and Montreal Railway Company's larger connections having failed, Root was allowed to operate the railroad and to preserve it from decay and debt until some more promising plan for the future could be devised and consummated.

This is not expressly found by the court, but it is the inference to which the testimony pointed. So far as the bondholders were concerned the property was, when Sackett commenced his action, free from debt, and wholly applicable to the satisfaction of their bonds. The Union Trust Company was the plaintiff and owner of the judgments of foreclosure.

Every other party was foreclosed by the judgments except as to the surplus, and the Union Trust Company's title to satisfaction out of the railroad was complete. The sale to Hull and Lincoln, and their mortgage of $5,000,000 to Park and Duncan were either for the benefit of the bondholders or in hostility to, and, therefore, in fraud of their rights. The consent of the Union Trust Company was not asked or given to the sale to Hull and Lincoln. Hull and Lincoln, therefore, took the title without furnishing the consideration and without the consent of the Trust Company, which may be said passively to have furnished it. A trust in the railroad, therefore, resulted in favor of the Union Trust Company. (1 R. S., 728, § 53 ; *Lounsbury* v. *Purdy*, 18 N. Y., 518 ; *Swinburne* v. *Swinburne*, 28 id., 568 ; 2 Story's Eq., §§ 1197, 1198.)

If Hull and Lincoln assumed to acquire title in hostility to the Union Trust Company's rights, then they became trustees *ex maleficio* in spite of themselves. Hull and Lincoln had no interest of their own in the property. Park and Duncan had none, except as bondholders, and were thus represented by the Union Trust Company. The Trust Company, as against them, could have moved and obtained a re-sale of the railroad under the judgment. (*Hale* v. *Clauson*, 60 N. Y., 339.) It is said that the granting of the motion for a re-sale rests in the discretion of the court; that is so, even where the purchaser is a *bona fide* one and has paid the consideration. Discretion is such an enlargement of judicial power as makes it adequate to accomplish justice. We cannot conceive that it would be perverted to deny it in the case presented, where the purchase was experimental and the consideration not intended to be paid unless the experiment succeeded. The sale of $6,000,000 of the mortgage bonds issued by the New York, Boston and Montreal Railway Company to the French purchasers doubtless vested in them an apparent lien upon the property, since the record title, through the referee to Hull and Lincoln and to the New York, Boston and

Montreal Railway Company, was perfectly straight, and the Union Trust Company had not challenged it.   To cut that lien off the Union Trust Company could have had recourse to the $5,000,000 mortgage given to Park and Duncan, who took that mortgage for the benefit of the bondholders, of whom the Union Trust Company was the trustee.   The Union Trust Company could treat that mortgage as the real proceeds of the foreclosure sales.   (*Dows* v. *Kidder*, 84 N. Y., 121.)

In whatever aspect we look at the case, or whatever form of remedy or theory of relief should be adopted, the bondholders, through their trustee, were prior in right and in lien, and were the equitable owners of the railroad for the purposes of procuring payment to themselves, free from any prior or superior incumbrance.

The suggestion that the referee appointed by the court to make the sale displaced the owner of the judgment in its title to it, or right or duty to seek satisfaction thereof and take the proper remedies therefor, is not valid.   The referee is appointed to make the sale as an impartial and responsible manager for the benefit of all parties concerned, and the Trust Company was most concerned. It was the Trust Company's right to have a genuine sale and to have the proceeds thereof.   Its duty to the bondholders was measured by its right and power to protect them, and until that duty was performed, or it was competently released from it, it continued.

Marvin Sackett was the owner of $8,700 of the bonds of the Lebanon Springs Railroad Company.   He brought an action in the Supreme Court, as he alleged in his complaint, " in behalf of himself and all others similarly situated, who hold any of the $2,000,000 of the bonds of the Lebanon Springs Railroad Company, and who shall be entitled to avail themselves of the benefit of this suit."   He alleged in his complaint the aforesaid sales to Hull and Lincoln; their mortgage of $5,000,000 to Park and Duncan; and their conveyance, subject to the mortgage, to the New York, Boston and Montreal Railway Company, and alleged that Hull and Lincoln and Park and Duncan acted throughout for the benefit of the Lebanon Springs bondholders ; that nothing had been or would be realized for the bondholders by a continuance of the existing situation, and he prayed that a receiver be appointed and the rail-

road sold for their benefit. He made parties defendant, Russell C. Root, The Harlem Extension South Coal Transportation Company, the New York, Boston and Montreal Railway Company, and Daniel Butterfield its receiver, and no others. He alleged that they had no title or interest in the railroad valid against the bondholders, and prayed that it be so adjudged.

The defendant John Van Valkenburgh was thereupon appointed receiver, no one opposing. The defendants, the New York, Boston and Montreal Railway Company and its receiver, Butterfield, made default. The defendants Root and the Transportation Company answered, putting in issue some of the allegations of the complaint respecting the rights of the bondholders, but asserting no right or title in themselves to the possession of the railroad. Seven bondholders, upon petitions representing their interest, moved the court to be made parties, but their motions were opposed by the plaintiff and denied. The court, however, made an order " that the plaintiff's attorneys be and they are hereby required to serve copies of all papers and notices of every kind, which shall be served herein, upon Mr. F. L. Westbrook, of Kingston, Ulster county, N. Y., and he is hereby authorized and allowed to appear as counsel in behalf of said bondholders, hereinbefore mentioned, upon all trials, hearings and motions herein."

Park and Duncan also made application to the court to be made parties, alleging their ownership of $300,000 of Lebanon Springs bonds, $600,000 of Harlem Extension bonds, and their interest in the Hull and Lincoln mortgage. Their motion was opposed by the plaintiff and was not granted. One Henry A. Tilden, who claimed to own thirty Lebanon Springs bonds, was associated with the said Sackett in the bringing of the action. He retained Mr. Harris as counsel, and assumed to control the action. Mr. F. L. Westbrook, receiving no compensation, took no steps under his appointment adverse to the interests of the plaintiff. He delivered most of the papers served upon him to Mr. Harris, the counsel for Mr. Tilden. The case was pending upwards of four years, and was brought to trial in October, 1884. Meantime the plaintiff made two applications to the court for payment to himself, first, for services in collecting the facts and instructing his counsel " for the purposes of preparation to bring the said action," claiming $796.80,

which was allowed and paid him; second, for services rendered the Lebanon Springs Railroad Company; for this he was allowed and paid $3,000.04. Henry A. Tilden, the coadjutor of the plaintiff, also claimed and was allowed and paid, by order of the court, $23,967.37 for moneys expended at the request of the Lebanon Springs Railroad Company. Two other persons were allowed claims amounting to $2,858.75. All of these claims were, if valid, behind the mortgages. Various counsel, including those of the receiver, of the plaintiff, and Tilden, were allowed and paid $39,203.60, and included in this sum was a large allowance for services in the Sackett and Tilden claims. The receiver issued $350,000 in certificates. Finally the court directed judgment, in form substantially as prayed for, directing a sale of that part of the railroad situate in the State of New York, subject to the receiver's certificates to the amount of $350,000, and providing that the accrued interest thereon, and the allowed claims and obligations of the receivership remaining unpaid, including costs and taxes, be paid from the purchase-money. These amounted to $155,000, and for this sum the railroad was sold, under the judgment, to the defendants Hazard and Foster. The aggregate of liens thus accumulated, and given a preference to the bonds, was $505,000. The entire property was consumed, leaving nothing for the bondholders.

It was found by the trial court that the Sackett action was a representative one; that, since Sackett brought the action for himself and all other Lebanon Springs bondholders, he represented them all, and they are bound by the judgment, and hence the plaintiffs cannot maintain the present action.

This is the important question in this appeal. If the Sackett action was, in truth, a representative action. fairly brought and honestly and regularly conducted, for the benefit of all the bondholders, the judgment therein is conclusive against these plaintiffs. (*Kerr* v. *Blodgett*, 48 N. Y., 62.) Representative actions are a recognized method of equity procedure, and the rule is thus codified: "Where the question is one of a common or general interest of many persons; or where the persons who might be made parties are very numerous, and it may be impracticable to bring them all before the court, one or more may sue or defend for the benefit of all." (Code of Civ. Pro., § 448.)

Of course, if Sackett did fairly, honestly and regularly bring and conduct his action for the benefit of these plaintiffs, then he brought them and their interests in the subject-mattter as fully before the court as if they themselves had brought precisely the same action; what he did in it they did; these plaintiffs in such case, therefore, put all their interests mentioned in the complaint in the hands of the court, and asked the court to take jurisdiction of them and dispose of them. This the court did, and no matter what irregularities in procedure or defects in parties there may have been, these irregularities and defects are chargeable to these plaintiffs; and in the absence of unfairness they are estopped to escape from the consequences of their own conduct, or if they wish any relief they must seek it in the action of *Sackett* v. *Root* itself, and not in a collateral action. It follows, therefore, that if the plaintiffs, through their representative Sackett, did not choose to bring Hull and Lincoln, or Park and Duncan, or their own trustee, the Union Trust Company, or the trustees of the New York, Boston and Montreal Railway Company's mortgage into court in order to cut off whatever lien or title any of them might have or claim, the law imputes the omission to the plaintiffs, and refuses to relieve them, at the expense of third parties, from the consequences of their own acts. Plainly they could, if they would, cut off their own interests in the railroad, whether legal or equitable, whether they cut off that of any one else or not; and they were not obliged to cut off the interest of any third party in order to cut off their own. If the Sackett suit was a true representative suit, fairly brought and conducted for the benefit of all the Lebanon Springs bondholders, the judgment in it bars the plaintiffs from maintaining this action, except possibly with respect to that part of the railroad situate in the State of Vermont. If these plaintiffs wrecked their own interests, they must abide the consequences. But if it was not fairly conducted for the benefit of all the Lebanon Springs bondholders, if the plaintiff Sackett, and his associate in its management, Tilden, used the suit to acquire an advantage for themselves and others at the expense of the interest of those whom they assumed to protect, the latter are not bound by it. (*Kerr* v. *Blodgett, supra; Campbell* v. *R. R. Co.*, 1 Woods, 368.) An appeal in the Sackett action would only bring up for review errors of law or fact committed by the court.

A bill of review, impeaching the action and judgment for fraud, brings up the fraudulent practices of the plaintiff, or suffered by him in the action, whereby he wronged those he assumed to protect. Such is this action. It is a direct attack, not upon any alleged errors of the court, but upon the fraud of the plaintiff. (*Hackley* v. *Draper*, 60 N. Y., 88, 92; *Dobson* v. *Pearce*, 12 id., 156; *State of Michigan* v. *Phœnix Bank*, 33 id., 9–27.)

The importance of the finding that the Sackett action was a representative one, has induced us to examine with care all the evidence bearing upon the question. The conviction is forced upon our minds that the finding cannot be sustained, and that the finding requested by the plaintiffs, namely, "That said suit of *Sackett* v. *Root* was neither brought nor conducted for the purpose of realizing the property to the owners of the Lebanon Springs bonds," ought to have been made.

Assuming that Sackett, and Tilden, his associate, in bringing and conducting the action contemplated the natural and probable consequences of their management of the action of *Sackett* v. *Root*, they cannot be acquitted of deliberate spoliation of the Lebanon Springs bondholders.

What has already been said suggests the delicate and highly responsible trust which a representative plaintiff assumes in bringing such an action as Sackett brought. He impliedly guaranties that he will not allow his private interest to conflict with his discharge of duty. Here we find Sackett and Tilden obtaining from the fund, which it was their duty to protect for the bondholders, $27,764.21 upon their private claims, which, if valid, were behind the bonds. No suggestion of these claims was made in the complaint. Presumably the other bondholders, if they had not been kept out of court by the plaintiff's intrusion as their self-elected representative, would have opposed their priority. If, aside from the bondholders, there had been made parties defendant those who, as we shall hereafter show, were entitled to claim an interest in the action, they presumably would have opposed such priority. There were no parties to the action interested to oppose these claims. Sackett and Tilden represented both sides of their own case. Not content to leave out of the action those who would naturally oppose these claims, they successfully opposed and kept out such of them as tried to come in.

Under a pretense of protecting the common and general interests of the bondholders, Sackett and Tilden sacrificed them to their own interests. This was a fraud, and of itself is sufficient to establish the non-representative character of the action and its misrepresentative character. Sackett's omission to make the Union Trust Company, Park and Duncan, and the trustees of the New York, Boston and Montreal Railroad Company parties to the action is significant. When a party brings an action for himself he can select his own defendants, but when he volunteers to sue as the representative of others, he should sue those who ought to be sued.

If the railroad was to be sold, the common interest of the bondholders required that all outstanding liens and clouds upon the title behind the bonds should be cut off, to the end that there should be no diminution of price upon account thereof.

Now, the Union Trust Company was the plaintiff in the original judgments, and, of course, their legal owner. As there had been no satisfaction of these judgments, the Union Trust Company was the party entitled to seek satisfaction. The bonds held by the bondholders were merged in the judgments. (See cases cited in *O'Brien* v. *Young*, 95 N. Y., 436; *Matter of European Central Railway Co.*, L. R., 4 Ch. D., 33; S. C., 19 Moak's Eng., 642, and cases cited in note thereto.) The bonds were of no further value than as evidence of their holders' equity in the judgments, or in whatever the trustee could obtain towards their satisfaction. Whether the Union Trust Company was to be deprived of its legal title to the judgments, or of its right to pursue all available remedies, or was to be used as an instrument through which the bondholders could work out their equities, its presence as a party was necessary. (*Hallett* v. *Hallett*, 2 Paige, 17–22; *Western R. R. Co.* v. *Nolan*, 48 N. Y., 513; *Greaves* v. *Gouge*, 69 id., 154.) The Union Trust Company was also the trustee of the Harlem Extension Railroad bondholders and the owner of the foreclosure judgment, whereby their rights were made second only to those of the Lebanon Springs bondholders. Certainly these bondholders were interested in the fund to be realized by the sale of the railroad; they were entitled to oppose Sackett and Tilden's priority upon their unsecured claims; to oppose the other charges whereby the entire fund was consumed, and, therefore, were entitled to be represented

in the Sackett action by their trustee. As the trustee represents the bondholders, his presence as a party is, in legal effect, their presence; and if the trustee is a party, the bondholders are not necessary parties, except in the case of the trustee's neglect or refusal to become a party or act properly as such, in which case one or more bondholders, acting as the representatives of all, may bring the action and make the trustee a party and compel his proper action as such. (Cases *supra.*)

It would seem to follow that the action by one *cestui qui trust*, as the representative of all, is not proper where the trustee is alive and not brought into court. He who seeks to procure the representation of all the bondholders should perform the condition precedent to such representation, namely, bring in as a party to the proper action their legal representative, their trustee. Where the trustee is dead the *cestui qui trust*, through one or more as their representative, can bring the action, since no trust shall fail for want of a trustee. (*Galveston R. R. Co.* v. *Cowdrey*, 11 Wall., 459.) It is plain that if the Union Trust Company is not cut off, and these plaintiffs are not cut off by the Sackett suit, then no bar exists to the present action.

Park and Duncan held the $5,000,000 mortgage given to them as mortgagees by Hull and Lincoln. That mortgage should either have been cut off, or wielded to cut off the French bondholders under the New York, Boston and Montreal Railway mortgages. In either case Park and Duncan and the trustees of the New York, Boston and Montreal bondholders should have been made parties.

The Constitution, as it is judicially construed, provides that no person shall be deprived of his rights or property by any judgment unless he is actually or constructively a party to the action in which the judgment is rendered. It is urged that the Union Trust Company was constructively a party, because it did not ask to become one, and because it must have known of the existence and object of the suit. The evidence of its knowledge of the character of the action is too feeble to support a finding to that effect. It is a novel proposition that a person may lose his prior-acquired property by hearing that other parties have become involved in a law-suit about it. Even *lis pendens* only affects claims acquired after the suit is commenced. It is said that the plaintiffs might have come in if

they had applied. Their application to do so would have been a concession of the point of their contention here, that the action was not a representative one. If they had come in they would have been bound; and if they had applied, and been refused, they would have been told, in effect, that their rights would be just as well protected if they were kept out as if they were let in, and thus they would have been bound except as against fraud. If they had come in, of course, they would have had an opportunity to resist the applications of Sackett and Tilden to spoliate the fund, but being out they could not know of such spoliation until after it was accomplished; and then, if they knew the law, they knew they could not be made accessories after the fact, by failing to seek to reclaim what was so effectually lost. Whatever might have been their duty if the action had been fairly conducted for the benefit of all, we need not inquire, since in such case they probably would have been without the causes of complaint which they now set forth.

The plaintiffs, as we have already said, could have assented to the action, and to all that was done in it, and thus by their assent precluded themselves from complaint. But there is no presumption that a principal consents to the acts of his agent whereby his agent defrauds him. Quite the reverse. The absence of affirmative evidence that the plaintiffs did not consent is not the equivalent of evidence that they did. We point out what was done and omitted, not for the purpose of declaring the rights of third parties who may not now care to assert them, but to show how far Sackett and Tilden trifled with and subordinated the rights of the bondholders to procure priority for their own unsecured claims. Unless the plaintiffs can be held to have consented to the Sackett action, then, whatever rights they could work out for themselves under the Union Trust Company's judgments, or the Park and Duncan mortgage, can be worked out in this action, since neither they nor the Union Trust Company nor Park and Duncan were parties to the Sackett action, and all necessary parties are made defendants in this action.

Sackett neglected for four years to bring the action to trial. Indeed, the trial seems to have been brought on and conducted by those who were interested to realize upon the claims which had been created during the four years of its pendency. There was

apparently some danger that further delay would imperil, by further accumulation, the par value of the claims already accumulated. Certainly Sackett waited until the wreck of the railroad, so far as the bondholders were concerned, was complete. Such an action, thus instituted, controlled and resulting, cannot be upheld. It was not a representative suit in fact; if it was such in form and regularity, then it is effectually impeached for fraud.

The plaintiffs are entitled to a reversal of the judgment and to a new trial in which they will be entitled to relief substantially the same as if the Sackett action had never existed. They were in no sense parties to that action, and, therefore, their rights remain untouched.

It is said that they are bound by the receiver's certificates, which were declared to be a first lien upon the property. This cannot be so without a violation of constitutional protection. The court acquires jurisdiction of the parties, and of the subject-matter before it, but, from the nature of the case, can only acquire jurisdiction of so much of the subject-matter as all the parties before it hold. When parties are unknown, equity provides for bringing them in, or reserving or securing their rights. A decree binds the parties to it. In railroad cases the courts have gone further than in other cases in displacing prior liens in order to preserve and operate the railroad, but only as between parties to the action, actual or constructive. They can create no lien against persons not such parties, and can displace none. (*Raht* v. *Attrill*, 106 N. Y., 423, and cases there cited.)

As said in *Union Trust Company* v. *Illinois Midland Company* (117 U. S., 460), "Those who take receiver's certificates must be deemed to have taken them subject to the rights of parties who have prior liens upon the property, and who have not, but should have been, brought before the court. While the court, under some circumstances and for some purposes, and in advance of the prior lien-holders being made parties, may have jurisdiction to charge the property with the amount of the receiver's certificates issued by its authority, it cannot, without giving such parties their day in court, deprive them of their priority of lien. When such prior lien-holders are brought before the court they become

entitled, upon the plainest principles of justice and equity, to contest the necessity, validity, effect and amount of all such certificates, as fully as if such questions were then for the first time presented for determination."

The trial court refused to find, as the plaintiffs requested, that the receiver realized only $236,500 upon the $350,000 of certificates issued, but failed to find what sum he did realize.

The evidence shows that he did receive that amount, and we think fails to show that he received any more. Thus the loss or waste of $113,500, or more than thirty-two per cent of the issue of certificates, would, if the certificates are first paid at par, be charged to the bondholders. There may be an equity in favor of the purchasers of certificates that the reasonable cost of the permanent betterment of the railroad be charged to all the bondholders, and thus ratably against the plaintiffs. (*Miner* v. *Beekman*, 50 N. Y., 337.)

The Central National Bank, of Boston, a large holder of these certificates, as plaintiff for itself and all other certificate holders, brought an action against Hazard and Foster, the purchasers of the railroad, upon the sale in the Sackett suit, and against the New York, Rutland and Montreal Railway Company, to which company Hazard and Foster conveyed the railroad, and against the American Loan and Trust Company, trustees of mortgage bonds issued by the said railway company. Judgment was obtained against said defendants, establishing the bank's ownership of its certificates and their lien upon the railroad, and providing for the sale of the railroad to pay the plaintiff and such others as should come in and establish their ownership. Such a judgment is good against the defendants in that action. They derive title to the railroad under the Sackett sale, which preferred the certificates. It is not binding upon the plaintiffs. Whether Hazard and Foster, or their grantees, are entitled to any equity for betterments against the plaintiffs is doubtful; they were bondholders themselves, and they acquired by their purchase the title of such of the other bondholders as acquiesced in the Sackett suit; they took the risk of its extent, and could expend as much money in betterments as they chose. They co-operated with other bondholders in making the purchase and in organizing the New York, Rutland and Montreal Railway Com-

pany in order to make it their grantee. This company could only mortgage its own title.

As there must be a new trial, we leave this question to be adjusted as the equities may then appear. There will need to be an identification of the bondholders who are entitled to come in and share with the plaintiffs in this action. They are those who held aloof from the Sackett action.

It is urged that the plaintiffs are estopped by their laches in not earlier signifying their dissent to Sackett's claim to represent them. They are not barred by any statute of limitations; they are not shown to have been advised of the Sackett action, or of its purpose or of its fraudulent character; it is said that it was the more notorious because of a legislative investigation. The notoriety, if it reached the purchasers, would have suggested that possibly some of the parties in interest were injured; and if it reached the plaintiffs, it possibly aided them in ascertaining the means by which injury was done them. These are possibilities — not more. Laches which does not amount to an estoppel or violate any rule of law does not release a cause of action, though often confirmatory of other evidence of its doubtful character. The only laches which we see in the case affecting the plaintiff's rights by way of estoppel is that of the Union Trust Company in allowing the sale to Hull and Lincoln to remain unchallenged until after the New York, Boston and Montreal Railway Company had, upon the strength of its recorded title from Hull and Lincoln, sold its mortgage bonds to the French purchasers; but the Hull and Lincoln mortgage saves them from the consequences of that acquiescence. As all the parties are before the court their several rights can be determined in this action.

The judgment should be reversed, new trial granted, costs to abide the event.

LEARNED, P. J., concurred; MAYHAM, J., not acting.

Judgment reversed, new trial granted, costs to abide event.