HAVEMEYER *et al. v.* BROOKLYN SUGAR REFINING Co. *et al.*

(*Supreme Court, Special Term, Kings County.* December, 1890.)

1. JUDGMENT—VACATING—EXPIRATION OF TIME TO ANSWER.
    Where defendants are satisfied with an interlocutory judgment rendered in an action, the judgment will not be vacated on plaintiffs' motion, based on the ground that defendants' time to answer had not expired.

2. SAME—ACTION AGAINST CLASS.
    The trustees of an illegal combination of corporations, known as the "Sugar Trust," brought an action against such corporations and certain of the holders of trust certificates, as representatives of the class, in which the trustees asked leave to account, and be discharged from their duties. *Held*, that an interlocutory judgment which grants the trustees substantially the relief sought would not be vacated on their motion because all the certificate holders were not named as defendants in the record.

3. PRACTICE—FRAUDULENT EXTENSIONS OF TIME TO ANSWER.
    Extensions of time to answer, collusively given by the trustees to the defendant corporations composing the trust, to prevent the entry of judgment on application of the certificate holders, will be disregarded, and judgment entered notwithstanding such extensions.

4. JUDGMENT—MOTION TO VACATE—WHO MAY JOIN.
    A defendant who has not answered, and who has not appeared on the argument of a motion to vacate the judgment, will not be permitted to join in the motion after its submission for decision.

Motion to vacate interlocutory judgment.

Action by Henry O. Havemeyer and others, constituting the board of trustees of the Sugar Refineries Company, (Sugar Trust,) against the Brooklyn Sugar Refinery and the other companies forming the "Sugar Trust," which had theretofore been adjudged illegal, (*People* v. *Sugar Refining Co.*, 3 N. Y. Supp. 401, affirmed by the general term of the supreme court in 7 N. Y. Supp. 406, and by the court of appeals in 24 N. E. Rep. 834,) and certain holders of "trust" certificates. The object of this action, as stated in the complaint, was to obtain a decree declaring that plaintiffs were no longer required to continue in the discharge of the duties as members of such board; that the "trust" property in their hands be sold; that the persons interested

in the same be ascertained and be required to assert their claims in this action; that they be enjoined from bringing any other action to assert such rights; and that plaintiffs, on accounting for the property in their hands, be discharged from all further liability in the premises. Duncan Cameron and John H. Gleason were made defendants in this action on their own application as holders of "trust" certificates. Defendants Cameron and Gleason move for the appointment of a receiver.

While the action brought by Havemeyer was pending, Duncan Cameron, as a certificate holder, sued said Havemeyer and his associates to obtain a speedy settlement of the affairs of the "trust." Plaintiff alleged that though defendant trustees, in the action brought by them, averred that they were willing to account to the certificate holders, yet, as a matter of fact, they were keeping the property of the "trust" together at great expense to the certificate holders in order that it might be sold in bulk so as to prevent competitive bidding, it being their object, together with others, to reorganize the "trust" for their own benefit, and to transfer the property in their hands to the reorganized body; that said trustees, in futherance of their scheme, had made the firms of Nash, Spaulding & Co. and Wormser & Co. defendants in the action brought by them; that said firms were secretly cooperating with said trustees, and, while apparently representing the interests of the certificate holders, they were really endeavoring to delay judgment in said action, and to induce the certificate holders to surrender their certificates; and that said trustees are secretly buying up certificates in abuse of their trust. On November 11, 1890, Henry W. Slocum, Stephen V. White, and Henry O. Havemeyer were appointed receivers of the property of the "trust." On November 15, 1890, the special term entered an interlocutory judgment, in which it was adjudged that the trustees held the trust property in trust for the certificate holders, and that they should be discharged, and account to the certificate holders. The trustees were given 30 days in which to make a full disclosure to the receivers of all their doings while on the board of trustees, and to render their account; and they were directed to immediately turn over to the receivers the trust property, including the stock of the corporations composing the trust. The receivers were directed to ascertain and report to the court the best disposition to be made of the property, and to investigate the condition of each of the corporations comprising the trust, and the officers and employes of such corporations were directed to make full disclosure to the receivers. The receivers were further empowered to bring and defend all necessary actions. The account of the trustees and the objections thereto were directed to be submitted to a referee, who was empowered to hear testimony on all controverted claims. All persons were enjoined from doing anything which might embarrass the receivers in the discharge of duties. The trustees now move that this interlocutory judgment be vacated. For opinion on motion for injunction, see 12 N. Y. Supp. 126.

*Edward M. Shepard* and *Elihu Root,* for plaintiffs. *Lockwood & Hill,* for defendant Cameron.

PRATT, J. This is a motion by plaintiffs to vacate the interlocutory judgment entered herein November 15, 1890, on the ground of irregularity. The irregularity which they allege is that the defendants' time to answer had not expired. The parties who are prejudiced do not make the motion; it is made by plaintiffs alone. So long as the former are satisfied with the judgment, this irregularity need not concern the plaintiffs. But plaintiffs, through their counsel, allege that they are prejudiced by the judgment. In answer to that contention it is to be noted that the judgment grants them substantially the relief which they prayed for in their bill, and such as was entirely appropriate to the allegations therein contained. They do not aver that they are certificate holders in their own right, nor do they ask any relief as such. The re-

lief sought by them is that they should have leave to account as trustees, and be discharged from their trust. The judgment provides that they may account, and that they shall be discharged by final judgment when they have fully accounted. Meantime the court has appointed receivers to take the property in their hands, and if they would turn it over to the receivers their accounting will be a very simple matter. True, they say the property in their hands is incapable of being actually partitioned, but that is a matter which concerns the certificate holders, and they have not yet complained. Besides that, the judgment provides for all that. It adjudges that the property in question belongs to the certificate holders, and provides a speedy method for ascertaining the nature, extent, and value thereof, so that they may obtain the benefit of it. The court will be better enabled to judge whether the property can be actually partitioned or not when it learns what it consists of; and it appears that one of the chief representatives of the plaintiffs has declined to inform the receivers of facts necessarily affecting the value of the stock of the constituent corporations, which is the main item of property in the plaintiffs' hands. Again, plaintiffs say that numerous owners of $50,000,000 worth of property are not yet before the court, but plaintiffs ought to have thought of that before. They, by their bill, made Messrs. Wormsers and Nash, Spaulding & Co. defendants, as representatives of all other certificate holders. If they wished others to be joined, they might have joined them, or brought them in as unknown owners. What they did was to bring in certain certificate holders as representatives of a class, who might defend for that class under section 448 of the Code. The court has now taken the subject-matter of action into its custody, and proposes to deal with that as a proceeding, to a certain extent, *in rem.* The absent part owners may come in under the judgment, and receive their shares, because the judgment has been entered on motion of certificate holders, who move, not for themselves alone, but in behalf of all other certificate holders; hence the court will provide for those who are not actual parties to come in under the judgment. Indeed, that is their plain right and plain duty. *Travis* v. *Myers*, 67 N. Y. 542; *Kerr* v. *Blodgett*, 48 N. Y. 62. I repeat that this motion is not made by certificate holders. They do not complain. The complaint comes solely from the trustees of the sugar trust, as such.

Furthermore, plaintiff's counsel were asked on the argument to state wherein the judgment was prejudicial to them, in order that it might be modified or amended, if necessary; but they utterly refused to state anything on that point, or to discuss the merits of the judgment at all. They stood wholly on their alleged technical rights. I fail to see how any technical right of theirs has been violated; for if the right to answer is cut off, the plaintiffs' bill is the only pleading before the court. It was claimed on the hearing of the motion for the appointment of receivers that a reorganization was desirable, and the court can already see that that must be true. The appointment of receivers, and the judicial ascertainment of the value of the property through them, are the first and necessary steps to accomplish the reorganization. Can it be reasonably expected that certificate holders will come into a reorganization, or that they or anybody else will bid upon the property for that or any other purpose, unless they know what it consists of, and its value? The judgment directs that the receivers shall at once ascertain and report to the court what the property consists of, its value, and the best disposition which can be made of it, for the interests of all concerned. In fact, it looks to immediate action and immediate report, which shall inform the court and certificate holders of the nature and value of their property, so that they can exercise intelligent judgment as to the course which they will pursue,— whether to have the property sold in parcels and the proceeds distributed, or go into a scheme of reorganization. It therefore seems as plain as anything can be that the chief difficulty in the way of reorganization is the ignorance

of everybody except plaintiffs and their counsel of the value of the stock of the corporations which plaintiffs lately held, and that is the chief item of the property in question. The judgment provides for the ascertainment of that fundamental fact by requiring the corporations to make discovery and disclosure in that respect. It would therefore seem that reorganization will be hastened by obeying this provision of the judgment, instead of refusing to do it, as the plaintiffs' chief instrument (Mr. Searles) has already done, and then sending counsel to court to move to vacate the judgment on technical points, and to refuse to answer a plain question by the court as to the reason why they allege that the judgment will retard the reorganization.

It may be as well to note here the answer to the suggestion that the provisions of this judgment necessarily involve delay in the receivers' report, until an examination can be made into the affairs of these corporations. That is a plain mistake. The receivers are thereby directed to make report from time to time. They may report upon the value of the stock of these corporations just as soon as Mr. Searles and the other officers of these corporations will obey this judgment by disclosing the property represented by that stock, but he refuses to permit these receivers to ascertain this, and thus himself prevents their report. Instead of assisting them in that work, he comes to court to have the judgment set aside which provides for this fundamental disclosure. To the ordinary mind this seems a very puzzling thing, especially when done by the chief advocate of speedy reorganization. The counsel refused to explain this mystery. I infer that they were not at liberty to do so. The court must therefore draw its own inferences, one of which is that the provisions of this judgment are right on the merits, and that they are in the interests of the certificate holders in any view, especially in the interests of those who desire a speedy and fair reorganization. The property being in the hands of the receivers, and its value being known, it may be sold or turned over without delay to certificate holders, if they shall unite or sell for its fair value, to be paid for in part with certificates of any substantial portion of them who wish to reorganize, it being always understood that they shall pay the fair value of each share to each certificate holder who does not wish to unite; but the scheme must be fair, open, and above-board. No holder must be forced or allured into any scheme. He must be able to act upon his own judgment as to what is for his own interests, and that is precisely what this judgment means by requiring this disclosure of facts affecting the value of this stock in the most speedy manner. Before the receivers were appointed the property was in the custody of a body of men who had no legal right to deal with it, whose duties were defined by no written instrument, who had given no security for its safety, and who refused information to certificate holders. The plaintiffs seemed to be most concerned about the rights of Mr. Gray, the receiver of the North River Sugar Refining Company. Those rights have been already twice considered by this court,—once at general term of the first department, (10 N. Y. Supp. 632,) and again in this department by Mr. Justice CULLEN, on Mr. Gray's motion to be joined as defendant in this action. In neither case was the court able to see how Mr. Gray, as such receiver, had any interest in the property in question. He has been joined as a party defendant here on his own motion. He had notice of this application for this judgment, and instead of showing why it should not be entered he came not at all. The affidavit filed in opposition to this motion shows that he does not propose to take any part in this action. I therefore fail to see why Mr. Gray's rights in this action should be any concern of the plaintiffs.

After the argument of this motion, and the parties had dispersed, an affidavit of Mr. Talbot was sent to me, wherein he states he is the attorney for the Brooklyn Sugar Refining Company, one of the defendants in this action, and that he joins in the motion to vacate this judgment. No one appeared in court to represent him or his clients on the motion, so far as I could ob-

serve, and he now fails to state when he appeared in the action.   He further states that his time expired, but had been kept open.   Everything appears to have been kept open in this suit from the commencement until the certificate holders began to act for themselves.   Mr. Talbot fails also to show wherein the judgment prejudices his client, or what answer he desires to make.   Indeed, he does not show that he desires to make any answer.   To test the sincerity of his appearance, what answer can he make?   Does he wish to deny that these trustees have property which does not belong to them, and that they desire to deliver it up and account to the true owners?   The fact is, he did not appear upon the argument of the motion, and he cannot now be regarded as joining in the motion.

Plaintiffs further claim that the original motion by Mr. Cameron was not broad enough to authorize the court to enter the judgment, and that that motion was waived, abandoned, or withdrawn.   This brings us to a technical view of the motion.   We may observe, in the first place, that on October 15, 1890, a motion for judgment was duly noticed for the 20th by Mr. Cameron, a certificate holder, who was joined as defendant on the 14th.   He did not answer.   The allegations of the complaint were full enough for him.   He simply insisted that judgment should be entered as the logical result of the allegations of the complaint.   The ground of his motion was that time to answer had expired, and plaintiffs did not mean to enter judgment promptly, but wished to delay that result until they could accomplish certain schemes of their own.   This action was commenced July 26th or 29th.   On August 20th, judgment might have been entered.   True, Mr. Gray's motion to be admitted as a defendant was pending, but there was no stay of proceedings.   That motion was decided August 22d, but the order was not entered until October 10th.   In the mean time Mr. Gray decided that he would not answer.   On September 23d Mr. Gleason appeared, joining himself as defendant, and answering; but his answer presents no question as against the plaintiffs' right to an accounting and to be discharged when they had accounted.   As already observed, they do not sue as certificate holders, and seek no relief in that capacity.   Mr. Gleason did not wish to raise any question about their right to render an account, and all other points which he desired to present as against the trustees as such could be raised on their accounting.   The other points raised by his answer related to questions which might arise as between certificate holders, and may be properly disposed of when they come in or are brought in under the judgment.   Hence he joined with Mr. Cameron in his motion for judgment, which was in behalf of himself and all other certificate holders.   The judgment is therefore plainly not for himself, but for all, and all may come in under it, and have their rights settled.   *Hallett* v. *Hallett*, 2 Paige, 15; *McKenzie* v. *L'Amoureux*, 11 Barb. 516, and authorities above cited.   This motion was made by Cameron, and Gleason joined in it.   It is not true that it was waived, withdrawn, or abandoned.   On the contrary, it was vigorously pressed.   The court determined that it would not decide the motion at once, but reserved the question, and substantially so stated in the order appointing the receivers.   On the return-day of the order to show cause, and on the argument, there was no pretense that any party's time to answer had been extended, or that any technical obstacle stood in the way to the entry of judgment, except Mr. Gleason's answer, and he joined in asking for judgment, as above stated.   Since all parties had notice of the motion, they are bound by the judgment.   But there is another and broader view.   The corporations defendant are simply instruments in the hands of plaintiffs, who elected all the directors, and the latter elected the officers, and most of the plaintiffs hold offices in these corporations.   Mr. Searles is an officer of four or five of them, Mr. Gurgensen of another, and Mr. Stursberg of two more.   Now, if the plaintiffs can delay by merely extending time to their own instruments, by obviously collusive agreements, then the action would never be in

condition for certificate holders to obtain judgment, which will be a reproach to the administration of justice. I have, therefore, no doubt of the power of the court to disregard extensions of time as between parties situated as these plaintiffs and these defendant corporations are, because I am satisfied they were collusively given, if given at all, for the purpose of keeping the action open, and preventing the entry of judgment on the application of certificate holders. It is a significant circumstance in this connection that there is now an entire absence of any affidavit in behalf of any one of the defendant corporations tending to show that they desire or intend to interpose an answer, or that they claim to have any honest defense. Indeed, I cannot imagine how they could raise an issue upon the complaint. There is, in my judgment, no merit in this action, (motion,) and it can only result in embarrassment to the receivers, and delay in settling up the affairs of the trust. There can be no doubt that a speedy reorganization is for the best interests of certificate holders, and any unnecessary delay would be injurious to all parties interested. It is clear there can be no reorganization except through the receivers, and any obstruction placed in the way of their duties will delay such results. If it can be made to appear that any party is prejudiced by the decree, or that it is imperfect in detail, there is no difficulty in modifying it so as to do justice to all. It must be clear that as soon as the value of the trust property can be ascertained, at that moment the exact value of the certificates can be computed. Until then all is involved in doubt and uncertainty, and any stay upon the receivers delays reorganization. Motion denied.