WILDER and others *vs.* KEELER and others.

Under a decree, upon a creditor's bill, for the creditors to come in and prove their demands, it is a matter of course to permit a creditor to come in and prove his debt at any time before the fund is actually distributed and paid out, upon his showing a sufficient excuse for not coming in before the master, and upon payment of all the costs produced by the delay.

After the filing of the master's report, a creditor who has neglected to come in in time, cannot have an ex parte order permitting him to go before the master and prove his debt; but he must give notice of his application to the solicitors of the creditors who have already proved their claims, and to the original parties in the suit.

Neither a party to the suit nor a stranger, will, after the filing of the master's report, be permitted to purchase a demand against the estate, which the owner had neglected to establish, and to prove the same before the master, unless there is a surplus of the fund.

A party who acquires an entirely new right or interest in the subject matter of the suit, by purchase, pending the litigation, must bring such right or interest before the court by a supplemental bill, or by an original bill in the nature of a supplemental bill.

A purchaser of the rights of one of the parties to a suit pending the litigation, will not, without the consent of the other parties to the suit, be permitted to come in and take a part in the proceedings in the cause, unless he makes himself a party by filing a supplemental bill.

March 20.    THIS was a creditor's bill for the settlement and administration of the real and personal estate of Gilbert F. Lush, deceased; and the usual decree was entered for an account of the estate and for the creditors to come in and prove their demands. Under this decree debts were proved before the master to an amount far exceeding the funds belonging to the estate. After the filing of the report and the confirmation thereof, with the exception of some particular parts to which objections had been taken and argued before the court, J. Wright, one of the complainants, purchased and took an assignment of a debt which had not been claimed before the master. He now presented a petition asking to be permitted to come in and prove that debt, so that he might be entitled to a rateable proportion of the fund. The application was opposed by several of the creditors who had come in under the decree and established their claims against the estate.

*J. Edwards,* for the petitioner.

*J. King & B. R. Wood,* for the opposing creditors.

1832.

Wilder
v.
Keeler.

THE CHANCELLOR. By the practice of the English court of chancery it appears to be a matter of course to permit a creditor to come in and prove his debt at any time before the fund is actually distributed and paid out; upon a sufficient excuse shown for not coming in before the master in due season, and upon payment of all the costs which have been produced by the delay. In such case, however, he must pay the expense of proving his debt before the master. In the case of *Angell* v. *Hadden,* (1 *Mad. Rep.* 529,) Sir Thomas Plumer permitted a creditor to come in and prove his debt, after the money had actually been apportioned among the other creditors; it not having been paid over to them by the accountant general. And in the case of *Gillespie* v. *Alexander,* (3 *Russ. R.* 130,) the master of the rolls permitted a creditor to come in and prove his debt even after a part of the distributees had received their shares. Although upon appeal from his decree it was reversed, so far as it went to charge the whole debt upon those shares of the legatees which remained in court, Lord Eldon did not question the propriety of permitting the creditor to come in and prove his debt, even at that late period. It appears by some of the English cases that it is the practice there to permit the creditor to take an ex parte order to go before the master and prove his debt. The same course was adopted in the case of *Mason* v. *Codwise,* (6 *John. Ch. Rep.* 184;) but the regularity of that proceeding was questioned, and was finally settled by a stipulation between the parties. Within the last two or three years, however, this court has repeatedly decided that an ex parte order is improper; and that the creditor applying for leave to prove his debt, after the filing of the master's report, must give notice of the application to the solicitors of the creditors who have established their claims before the master, as well as to the original parties in the suit. Such notice has been given in this case. And if Peters, the creditor, had not assigned his debt, and had applied within a reasonable time after he was informed his debt had not been proved before the master, the application would have been granted.

1832.

Wilder
v.
Keeler.

To the application now made there are some objections of a technical character, as well as those which go to the merits of the application. This petitioner is before the court as one of the original complainants claiming a specific debt against the estate of Lush. And as a general rule, a party thus situated, who acquires an entirely new right or interest in the subject matter of the suit, by purchase, pending the litigation, should bring that right before the court by a supplemental bill, or by an original bill in the nature of a supplemental bill, to have the benefit of the proceedings in relation to such newly acquired right or interest. Neither will the court permit a purchaser of the rights of one of the parties pending the litigation to come in and take a part in the proceedings in the cause without a supplemental bill, unless by the consent of the other parties to the suit. (*Bozon* v. *Bolland*, 1 *Russ. & Mylne's Rep.* 69; *Foster* v. *Deacon, Mad. & Geldart's Rep.* 59.) Although the decree is in favor of all the creditors who may elect to come in and prove their debts under the same, it does not follow that a stranger or even a party to the suit may afterwards buy up the claims of those creditors and come in of course under the decree.

Independent of these technical difficulties, I think it would be inconsistent with public policy, unless there was a surplus, to permit the parties to the suit, or strangers, after the master has made his report, to buy up claims against the estate, which the owners of those claims had neglected to prove before the master, and which perhaps they might not be disposed to prosecute on their own account. The purchase of the claim in this case was particularly objectionable; because it was purchasing a chose in action, as to which there must necessarily be litigation between the assignee and some particular classes of the creditors who had come in under the decree. As this is an application addressed to the discretion of the court, I cannot in the exercise of a sound discretion, establish a precedent which will have a tendency hereafter to encourage a speculation in disputed claims; when perhaps the holders of those claims would never think of prosecuting them on their own account, or at their own risk in respect to the costs. Although

Peters, in his affidavit annexed to the petition in this case, swears he had intended to appear before the master and prove his demand, he gives no reason why he did not make an application for leave to come in during the period of seventeen months which elapsed between the filing of the master's report and the sale of his demand to this petitioner. Neither does he allege that he ever had any intention to make any such application as the present, or to go into this litigation on his own account, after he had ascertained there was to be a contest between the creditors who had come in and established their claims before the master, as to the final disposition of the fund.

The petition must therefore be dismissed. (a)

(a) See *Houlditch* v. *Lord Donegall, Beatty's Ch. Reports,* 405.