The Vice-Chancellor.
A statement of the facts contained in the bill, is the shortest mode of disposing of the demurrer. Robert L. Bowne, being seised in fee in possession of a farm of forty-five acres at Bloomingdale, of which the premises in question are a part, mortgaged the same to William Edgar the elder, on the 2d of January, 1809, to secure the payment of his bond for $20,000 *430 with interest. The mortgagee died November 1st, 1820, leaving a will appointing four executors, of whom only one, his son William, qualified and acted as executor. The mortgage of Bowne was fully paid and satisfied, by various means, to the mortgagee and to his executor William Edgar. Junior.
Robert L. Bowne died intestate on the 21st of June, 1821, seised in fee of the lands mortgaged to Edgar, leaving a widow, and nine children who as his heirs thereupon became seised in fee of the same. R. L. Bowne was in the possession or in the receipt of the rents and profits of the farm, from the time he first purchased it until his death.
William Edgar, Junior, died on the 27th of August, 1823, leaving a will of which Duncan P. Campbell and others were executors.
On the 11th of February, 1828, the executors of W. Edgar, Junior, in their own names, and also in the names of the three surviving executors of his father, (neither of whom had ever taken upon themselves the execution of the will of the latter,) filed a bill in this court to foreclose the mortgage executed by Robert L. Bowne, claiming as due, $18,000 with interest from July 2, 1818, They made defendants to the suit, his widow, and George Bowne his son, with all his other heirs excepting four children and one grandchild; together with numerous judgment creditors of R. L. Bowne, the mortgagor.
No notice of the pendency of this suit, was ever filed in the county clerk’s office.
On the 26th of December, 1833, Herman Le Roy Edgar, a son of W. Edgar, Jr. took out letters of administration de bonis non, with the will annexed, on the estate of his grandfather, W, Edgar the elder. He thereupon presented a petition to the chancellor, ex parte, for leave to proceed with the foreclosure suit, and to file a supplemental and amended bill to bring in parties who had been omitted, or whose rights had been changed by marriage or otherwise. The chancellor granted his application on the 6th of January, 1835. (Campbell v. Bowne, 5 Paige, 34.)
In August, 1839, he filed an amended and supplemental bill, pursuant to the leave thus given, in which the omitted heirs of R. L. Bowne were made parties, together with Benjamin Wal *431 dron and others. Waldron at this time resided in New Jersey, and was never served with process in the suit, or had any actual notice of its existence.
In February, 1845, Herman Le Roy Edgar filed a second amended bill, making some new parties, and asking a further discovery from the parties to the former bills, and an injunction against Waldron and the heirs of R. L. Bowne, but not praying for process of subpoena against either of them. And Waldron has never been made a party to the second amended or supplemental bill. There has been no decree made upon either of the bills filed by the representatives of the Messrs. Edgar.
To travel back in the order of time, on the 5th of October, 1837, George Bowne, the son of R. L. Bowne, executed a mortgage on eight equal undivided ninth parts of the westerly twenty-four acres of the farm at Bloomingdale, to Benjamin Waldron, to secure his bond for $19,000, payable in four years, with interest. Previous to that date, George Bowne, by conveyances from the other heirs, had become seised of the premises so mortgaged ; he was then in possession of the same, and he has ever since been in possession. This mortgage was recorded Oct. 14th, 1837.
On the 11th of October, 1844, Waldron assigned the bond and mortgage to George W. Soule, but the assignment was not recorded till the month of June following.
On the 16th of August, 1845, Soule assigned the same bond and mortgage to the complainant in this suit, who claims that there is due $12,542, with interest from October 5, 1844. The complainant was ignorant of the existence of the first Edgar suit, until after he received such assignment, and neither he nor G. W. Soule have been made parties to any of those suits.
On the 30th of October, 1845, he applied in writing to the solicitor of Mr. Edgar in those suits, setting forth his rights and claims under George Bowne’s mortgage, and requesting to be made a party defendant therein, and notifying the solicitor in the suits that in the event of his neglect or refusal, he should file an original bill in the nature of a supplemental bill, to enforce his mortgage against the land, and to establish its priority over that of Edgar. No response being made to his application, the complainant exhibited this bill accordingly.
*432 Besides the allegations of payment and satisfaction of the Edgar mortgage, he relies upon the lapse of time as a valid bar against it.
Such is the case made by the bill of complaint, and for the purposes of this argument, it is all to be taken as true.
In reference to an objection that the bill dons not describe any land, where it attempts to show what was mortgaged to Waldron, there is evidently an omission in the metes and bounds. But if those that remain were stricken out, the description would suffice. It would then be the westerly twenty-four acres of the farm of forty-five acres, which Robert L. Bowne mortgaged to William Edgar, and which is particularly described in the bill. To set off twenty-four acres upon such a description, a surveyor would run a line parallel to the west line of the farm.
The right of a person, who pendente lite takes an assignment of the interest of one of the parties in the suit, to make himself a party to the suit by a supplemental bill, is well settled. In Foster v. Deacon, 6 Madd. 59, Sir John Leach, Y. C., held that such a proceeding was proper; and Chancellor Walworth lays down the same rule in Wilder v. Keeler, 3 Paige, 164. It is also sanctioned by the best treatises on the pleading and practice of the court. (2Barb. Ch. Pr. 64 ; 1 Daniell’s Ch. Pr.378; Story’s Eq. Pl. § 348.)
What will be the result of such a bill, and how far the purchaser may be affected by the proceedings in the original suit, are wholly different questions. I have no doubt that the complainant in this case was entitled to file such a bill. When the mortgage was executed to Waldron, George Bowne was in the possession as the ostensible owner of the lands mortgaged. The mortgage to Mr. Edgar was apparently discharged by lapse of time. Waldron knew nothing of the suit upon it, and there was no constructive notice to him by a lis pendens, filed according to the statute.
When Soule became the assignee of the mortgage, Waldron was a non-resident, having no actual notice of the second suit, and not served with process. If the bill had been taken as confessed against him, on publication as an absentee, the statute *433 reserved to him the right of contesting the claim of Mr. Edgar, and that right at least passed to his assignee. All the title and immunities which Soule acquired, were transmitted to the complainant.
Thus it seems that the latter has substantial rights and interests, upon which he is entitled to a hearing and an adjudication, before the court proceeds to sell the estate mortgaged. Mr, Edgar declined to yield to him this opportunity, by making him a defendant, and he had no alternative but to proceed by a supplemental bill.
In so doing, it was not only proper, it was commendable, to make the bill in the nature of a cross bill. All the parties were before the court who were required to enable it to do complete justice to all concerned; and it would, have been oppressive to have used the supplemental suit merely to defeat the Edgar claim, and then to file an entire new bill to foreclose the Waldron mortgage. This is not a pure cross-suit, nor does the bill profess that character. Hence the objections to it as a cross bill, are not tenable.
In respect of the state of the original suits, and the possibility that Waldron may have admitted away his rights, it suffices that he was not a party to more than one of those suits, and not knowing of that one, he could not have confessed away his rights in it; and as there had been no decree, it was not too late for him, as a non-resident, to contest the claim, whatever other steps might have been taken in the suits.
The bill is not multifarious. What I have stated of its nature and objects, meets this ground of the demurrer.
The demurrer must be overruled, and the usual order entered.(a)

 Affirmed by the chancellor on appeal, Jan. 26,1847 ; 2 Barb. Ch. R. 106.