In re GRANT.†

(Supreme Court, Appellate Division, First Department.   May 7, 1909.)

1. EXECUTORS AND ADMINISTRATORS (§ 31*)—RIGHT OF TEMPORARY ADMINIS-
TRATOR.
   The right of a temporary administrator, appointed pending the probate
of decedent's will, to collect assets, terminates on the appointment of the
executor on the probate of the will.
   [Ed. Note.—For other cases, see Executors and Administrators, Cent.
Dig. § 188; Dec. Dig. § 31.*]

2. ACTION (§ 69*)—STAY—OTHER ACTION PENDING.
   A temporary administrator executed a receipt for $18,000 in payment
of decedent's seat in a stock exchange.  No part of the sum was paid,
and the seat was claimed by a firm of which decedent was a member.
Subsequently the seat was sold by the exchange for $59,685, over and
above charges due the exchange.  The trustee in bankruptcy of the firm
brought an action in the Supreme Court for the price, and made the tem-
porary administrator and executor a party.  Held that, since the Supreme
Court could determine whether the seat belonged to the firm, represent-
ed by the trustee in bankruptcy, or to the estate of the decedent, repre-
sented by the temporary administrator and executor, the proceedings in
the Surrogate's Court to compel the temporary administrator to account
for the amount acknowledged by the receipt should be stayed until the
determination of the action in the Supreme Court.
   [Ed. Note.—For other cases, see Action, Cent. Dig. §§ 744–751; Dec.
Dig. § 69.*]

Appeal from Surrogate's Court, New York County.

In the matter of the judicial settlement of the account of Frederic
Grant, as temporary administrator of James Grant, deceased.  From
the decree of the Surrogate's Court, the temporary administrator and
his surety, the American Surety Company, and Thomas H. O'Connor,
as substituted surety, appeal.  Modified, and remitted for further hear-
ing.

See 122 App. Div. 602, 107 N. Y. Supp. 375; 115 N. Y. Supp. 283.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGH-
LIN, McLAUGHLIN, and CLARKE, JJ.

Charles E. Souther, for appellant Grant.
Henry C. Willcox, for appellant American Surety Company.
Richard O'Gorman, for appellant O'Connor.
Arthur L. Marvin, for respondents Grant and others.

LAUGHLIN, J.   The question presented for decision on this ap-
peal is whether the learned surrogate was right in surcharging the ac-
count of the temporary administrator with $18,000 and interest there-
on from the 11th day of May, 1895, as the amount received or that
should have been received by him on the transfer to Charles F. Grant
of a seat in the New York Stock Exchange, which stood in the name
of the decedent.  One of the contentions of the appellants is that the
seat did not belong to the decedent, but was owned by a firm of which
he was a member, and that, therefore, the temporary administrator is
under no obligation to account therefor.  The decedent died on the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† For opinion on rehearing, see 116 N. Y. Supp. 1152.

22d day of April, 1895, leaving a last will and testament. The probate of the will was contested, which delayed the issue of letters testamentary until the 30th day of November, 1895, when they were issued to Frederic Grant, a brother of the testator, to whom the temporary letters had been issued. The decedent was a member of the firm of Grant Bros., composed of himself and Frederic, his brother, and Frederic's son, Charles F. Grant. They conducted the business of stockbrokers and were represented on the floor of the Exchange by the decedent, and had been since the formation of the firm in 1891. Prior to that time the firm had been composed of the two brothers only. Since 1877 the decedent was also the representative of the former firm on the floor of the Exchange. It appears from the evidence that the Stock Exchange was organized in 1869 by the consolidation of the Government (or Gold) Board of Stockbrokers and the Open Board of Stockbrokers and the former New York Stock Exchange. The decedent was a member of the Gold Board, and his brother Frederic of the Open Board, at the time of the consolidation. There is evidence tending to show that each of them owned a seat in the New York Stock Exchange after the consolidation, and there is a conflict of evidence on the question as to whether the seat which stood in the name of the decedent at the time of his death was the one which he originally owned, or whether it was the one which was owned by his brother Frederic; but the records of the Stock Exchange show that the decedent has been a member of the Stock Exchange ever since it was organized, and it does not appear what became of the seat which his brother Frederic owned therein.

The evidence upon which the question as to whether this seat was a partnership asset or the individual property of the decedent depends is quite unsatisfactory, owing to the fact that the partnership agreement evidently was not in writing and to the disqualification of the surviving partners to testify; but it would seem that further evidence might have been given. It does appear, however, that the profits of the firm consisted of charges or commissions on the purchases and sales of stock made on the Stock Exchange for the firm by the decedent and interest on loans to customers; that the commissions were not received by the decedent, but by the firm, and the firm paid the assessments levied by the Stock Exchange against the members upon the death of a fellow member, and such assessments were charged to the expense account of the firm. It appears that dues were paid to the New York Stock Exchange on account of this seat from the 1st day of January, 1877, to the 1st day of May, 1895, aggregating $3,000. It does not clearly appear whether there were dues in addition to the assessments upon the death of members, nor does it clearly appear whether the $3,000 paid to the New York Stock Exchange, said to have been paid for dues, embraced the assessments levied on account of the death of members. If there were dues, as distinguished from assessments, in this regard, it does not appear that the firm paid them. If the evidence be sufficient to warrant an inference one way or the other, I should say that it is to be inferred that the firm paid all charges made on account of this seat during its existence. There is other evi-

dence tending to show that the seat was regarded by the surviving members of the firm, after the death of the decedent, as a firm asset; but the foregoing is the only material evidence bearing on the question as to whether it belonged to the decedent or to the firm. This evidence, I think, tends to show that the seat was owned by the firm; but it is not very satisfactory, and is far from conclusive on that subject, and is scarcely sufficient upon which to predicate an adjudication one way or the other, especially in view of the fact that firms are not admitted to membership in the Stock Exchange, and are customarily represented by one of their members, who doubtless frequently contributes his seat as his share of the capital, and doubtless often the seat is purchased by the firm in the name of one of its members.

The Stock Exchange recognizes the survivorship of the right to a seat therein after the death of a member to the extent that it is provided, by rules, that the seat may be sold by the committee on admissions and the proceeds of the sale shall be applied in the first instance to the payment of obligations, if any, owing by the decedent to fellow members of the Exchange, and the surplus, if any, shall be paid to the personal representatives of the decedent, and evidently, in the sale of the seat, it reserves the right to pass upon the membership of the purchaser. The decedent owed no obligations to his fellow members of the Exchange, and the Stock Exchange, therefore, did not proceed to sell the seat. The surviving members of the firm, claiming the seat as a firm asset, were desirous of having one of their members elected and of having the seat transferred to his name by the Stock Exchange. It was evident, however, that under the rules of the Stock Exchange this could not be done without a receipt by the administrator of the decedent, showing a sale and transfer of the seat by him and the receipt of the full consideration, the object of which was to have no liens upon or claim against the seat in the name of the new member. The issuance of letters testamentary having been delayed as stated, Frederic Grant, on the advice of counsel, presented a petition to the Surrogate's Court for his appointment as temporary administrator for the purpose of executing a receipt that would enable the firm to have the seat transferred upon the books of the Exchange to the name of his son, who was the other member of the firm. In his petition these facts were set forth, and it was stated that the seat was an asset of the firm, but stood in the name of the decedent, and that the sole purpose of having temporary letters issued was to accomplish the end desired. Temporary letters were accordingly issued, and the American Surety Company became surety for the temporary administrator. The temporary administrator, under date of May 11, 1895, executed a receipt, reciting that he had received from Charles F. Grant the sum of $1 and other valuable considerations, "being the amount in full payment for the transfer of membership in the New York Stock Exchange of said James Grant, deceased, to said Charles F. Grant, in consideration of which I hereby relinquish all the right, title, and interest of said James Grant, deceased, as a member of the New York Stock Exchange." This was deemed unsatisfactory by the secretary of the Exchange, who furnished the usual blank in such cases, and thereupon

the temporary administrator filled out the blank and executed and delivered it to the Exchange in the following form, to wit:

"New York, May 11, 1895.

"I, Frederic Grant, as temporary administrator of the estate of James Grant, deceased, hereby acknowledge the receipt from Charles F. Grant of the sum of eighteen thousand dollars, being the amount in full payment for the transfer of the membership in the New York Stock Exchange of said Grant, deceased, to said Charles F. Grant, in consideration of which I hereby relinquish all the right, title, and interest of said James Grant as a member of the New York Stock Exchange.

"$18,000.              [Signed]  Frederic Grant, [Seal.]

"As Temporary Administrator of the Estate of James Grant, Deceased.

"Witness: J. C. Burns.

"Correct: William L. Bull, Chairman."

No part of the $18,000 was received by the temporary administrator. It appears, however, that the firm, acting under the advice of counsel, the significance of which it is difficult to appreciate, drew a check to the order of Charles F. Grant upon its own bank account for $18,000, which according to the testimony of Frederic Grant he indorsed, but according to his own testimony he did not, and it was then stamped for deposit by the firm and delivered to the bank; a mere bookkeeping entry being made concerning the same, no funds having changed hands. The temporary administrator received no authority from the court to sell the seat, and he executed no bill of sale thereof.

Assuming that the seat belonged to the decedent, the temporary administrator, at most, by his acts permitted the seat to be transferred on the books of the Exchange to the name of his son, who did not pay therefor, nor did the firm. Either the son or the firm, whichever was the purchaser, would still remain liable to the estate of the decedent for the value of the seat, if it belonged to such estate. It appears that on the 1st day of January, 1897, the surviving members of the firm took one Van Sickle, into partnership with them, and thereafter the business was still conducted in the name of Grant Bros. until the 3d day of December, 1900, when the proceedings in bankruptcy were instituted against them upon which, on the 18th day of March, 1901, both the firm and the individual members thereof were duly adjudged bankrupts, and the same trustee was appointed both for the firm and for the individual members. After the bankruptcy of Charles F. Grant, and on the 21st day of July, 1904, the Stock Exchange sold this seat, and realized on the sale the sum of $59,685 over and above all charges and payments due the Stock Exchange. That fund was claimed by the trustee in bankruptcy; but, a claim therefor having been made against the Exchange by some of the parties interested in the estate of the decedent, the Stock Exchange refused to pay it over to the trustee, and he commenced an action in the Supreme Court against it to recover the same, whereupon it interpleaded the appellant Grant, both as temporary administrator and as executor. That action is still pending undetermined.

It is evident that it can be authoritatively determined in that action whether this seat belonged to the copartnership, represented by the plaintiff, the trustee in bankruptcy, or whether it belonged to the estate

of the decedent, represented by his temporary administrator and by his executor. The right of the temporary administrator to collect assets doubtless terminated upon the appointment of the executor, and if there shall be a recovery in the action in favor of the estate of the decedent the fund will doubtless be awarded to the executor. In these circumstances it would seem that the temporary administrator either should be relieved from accounting for this fund, which he never received, or that the accounting proceedings should be postponed until the final determination of that action. Of course; if, by the action of the temporary administrator with respect to this seat, the estate of the decedent has been prejudiced, he should be held to account, and so should his sureties, within their contract obligations. While it seems improbable that the estate can be prejudiced with this fund in court, yet we cannot foresee the outcome of the litigation between the trustee and the temporary administrator and executor with that degree of certainty which warrants us at this time in saying that the estate has not been prejudiced by the conduct of the temporary administrator in executing the receipt in his official capacity, without which the seat would not have passed to Charles F. Grant.

I am therefore of opinion that the decree should be modified, with one bill of costs to appellants, by striking out the provision thereof surcharging the account of the temporary administrator on account of the sale of the seat in the Stock Exchange, and remitting the matter to the Surrogate's Court for a further hearing, and that further proceedings on the accounting be stayed until the final determination of the action pending between the trustee and the temporary administrator and executor, with leave to either party to bring on the accounting after such final determination of the issues in said action. All concur.

---

PENNYPACKER v. THOMAS R. LEVIS & CO.

(Supreme Court, Special Term, Erie County. May, 1909.)

CORPORATIONS (§ 513*)—NOTE—ACTIONS—PLEADING—ORDER DIRECTING ISSUES TO BE TRIED.

Under Code Civ. Proc. § 1778, providing that in an action against a corporation on a note, unless defendant serves with a copy of his answer a copy of an order of a judge directing that the issues be tried, plaintiff may take judgment as on default, where no issue was made by the answer, but the liability on the note was admitted and an alleged counterclaim set up, so that no issue could be joined until there should be a reply to the counterclaim, the service with the answer of a copy of an order directing the issues to be tried was not necessary.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 513.*]

Action by William G. Pennypacker, Jr., against Thomas R. Levis & Co. Judgment for plaintiff. Motion to vacate judgment. Motion granted.

Carnahan, Adams, Jameson & Pierce, for the motion.
William H. Daniels, opposed.

---